**SCRIVENER OIL COMPANY, INC., Employer–Appellant,**

v.

**DIVISION OF EMPLOYMENT SECURITY, State of Missouri, Respondent,**

and

**Jamie Obernuefemann, Claimant–Respondent.**

No. 27043.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 28, 2006.

Rick E. Temple, Springfield, for appellant.

Alan J. Downs, Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

This is an appeal by Scrivener Oil Company, Inc. ("Employer") from an order by the Labor and Industrial Relations Commission ("Commission") affirming the decision of the Appeals Tribunal, which determined that Jamie Obernuefemann ("Claimant") was not disqualified for unemployment compensation benefits by reason of her discharge by Employer. Employer contends that the Commission erred in finding that Claimant did not disobey an instruction of management, and because substantial evidence supported the conclusion that Claimant was discharged for misconduct connected with her work. We affirm in part and reverse in part.

Employer owns and operates eight Signal convenience stores. On September 9, 2004, Claimant, who was the manager of the Signal store in Buffalo, Missouri, was given a below satisfactory performance evaluation for cash register accuracy, inventory control, attitude and personnel relations. As a result of this unsatisfactory evaluation, Claimant was not given a pay raise, was given sixty days in which to bring the cash register accuracy and inventory control scores up to good or excellent, and to improve her attitude and personal relations with other employees. During this sixty-day probationary period, Claimant received several audits of the store which indicated a decrease in her cash register accuracy, inventory control, and lack of store cleanliness inside and out. Claimant was sent several warnings concerning her cash register accuracy and a copy of each was placed in her personnel file.

Employer also alleges that Claimant failed to follow instructions during the probationary period because she failed to move a beef jerky display as instructed by Employer's inventory specialist. Employer was also concerned about Claimant's attitude and lack of ability to set a good example for other employees. On October 13, 2004, Employer terminated Claimant's employment.

The next day Claimant filed for unemployment benefits with the Division of Employment Security ("the Division"), which was contested by Employer. The Division issued its "Determination," finding that Claimant was discharged by Employer on October 13, 2004, for "misconduct connected with work," which disqualified her from receiving unemployment benefits for six weeks under the Missouri Employment Security Law.

On October 27, 2004, Claimant appealed the Division's determination to deny her benefits to the Appeals Tribunal. A hearing was held and the Appeals Tribunal issued its findings of fact and conclusions of law reversing the Division's determination. The Appeals Tribunal found that "[C]laimant [was] not disqualified for benefits, by reason of her discharge by [Employer] on October 13, 2004." Employer filed an "Application for Review" of the Appeals Tribunal's decision and the Commission entered its order, adopting and affirming the decision of the Appeals Tribunal. Employer now appeals.

Employer raises two points on this appeal. In Point I, Employer argues that the Commission erred in finding that Claimant did not disobey an instruction of management. In Point II, Employer asserts that the Commission erred by concluding that Claimant was not disqualified for benefits in that her failure to follow the above alleged instruction, and her declining job performance, amounted to misconduct connected with her work.

 Our review of the Commission's decision is governed by Section 288.210,[1] which states in pertinent part:

The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

*Hoover v. Cmty. Blood Center*, 153 S.W.3d 9, 12 (Mo.App. W.D.2005) (quoting Section 288.210.) We examine the whole record to determine whether there is sufficient competent and substantial evidence to support the award. *Id.* In the rare case in which the award is contrary to the overwhelming weight of the evidence, this standard is not met. *Dolgencorp, Inc. v. Zatorski*, 134 S.W.3d 813, 817 (Mo.App. W.D.2004). We will not substitute our own judgment for that of the Commission's regarding its evaluation of the evidence relative to its findings. *Dixon v. Div. of Employment Sec.*, 106 S.W.3d 536, 540 (Mo.App. W.D. 2003). We defer to the Commission's "determinations regarding weight of the evidence and the credibility of witnesses." *Id.* On appeal, we are not bound by the Commission's conclusions of law or its application of the law to the facts. *Hoover*, 153 S.W.3d at 12. Whether an employee's actions constitute misconduct related to her work is a question of law. *Dixon*, 106 S.W.3d at 540.

 In Point I, Employer argues that the Commission erred in finding that Claimant did not disobey an instruction from Employer because it failed to consider uncontroverted testimony and an exhibit which demonstrated that she failed to comply with an instruction given to her to move a beef jerky display.[2] We agree.

The Commission adopted the decision of Appeals Tribunal and therefore we turn to that decision in reviewing the judgment of the Commission. The Appeals Tribunal

---

1. All references to statutes are to RSMo (2000), unless otherwise indicated.

2. It is not until Point II, however, that Employer argues the significance of this error.

found that Claimant was discharged, after being placed on probation, for her below satisfactory evaluation, because of a decline in cash register accuracy, inventory control, store cleanliness and "it was reported that [C]laimant did not move the beef jerk [display] as suggested by an inventory specialist." Relevant to Point I, the Appeals Tribunal found specifically that "[C]laimant was not told by the inventory specialist to move the beef jerky [display]."

Employer argues that there was uncontroverted evidence that Claimant was told to move the display. At the hearing the following exchange occurred between counsel for Employer and Terry Bumgarner ("Bumgarner"), Employer's retail coordinator, regarding a report made to him by Kelly Gremling ("Gremling"), Employer's inventory specialist at the time:

Q. [A]nd at the time she prepared this, did she talk with you about the problem that she had with [Claimant]?

A. Yes.

Q. And—and what was the problem?

A. The—the specific problem here was she asked her to move a—shipper [display] and it never was moved. She asked I believe on the 28th of September it says there. And as far as October 7 it hadn't been moved yet.[3]

Q. So she—she would have went into the store not if something that needed to be changed for purposes of salebility [sic]?

A. Right.

Q. And would have directed [Claimant] to move that?

A. Right.

Q. And would [Claimant] have been responsible to follow those directions?

A. Yes.

When Claimant was asked if Gremling told her to move the display she stated, "yeah, I guess she probably did." When asked if she moved it she replied, "I guess I didn't. I don't remember the instance, but I'm not going to deny it." Furthermore, Gremling's report was entered into evidence and it stated, in pertinent part:

I asked [Claimant] to move a Jack Link jerky shipper [the display] to a different position on the counter or shelf to help sell the product down. I made my request on September 28th. I was back at her store a week later [and] the shipper was in the same place.[4]

As noted above, the "Commission determines the weight and credibility of the evidence, and, when that evidence conflicts, the Commission's determination of the facts is conclusive." *Geiler v. Mo. Labor and Industrial Relations Comm'n,* 924 S.W.2d 606, 608–609 (Mo.App. E.D. 1996). However, the Commission may not "disregard or ignore undisputed testimony of a witness not shown to have been impeached or disbelieved by the agency." *Lusher v. Gerald Harris Const., Inc.,* 993 S.W.2d 537, 545 (Mo.App. W.D.1999). Only when the Commission finds it to be unbelievable or not credible, is it free to ignore such evidence or testimony. *Id.*

There is no evidence in the record to support the Commission's express finding that Claimant was not told to move the display. The Commission did not specifically find Bumgarner's testimony unbelievable. In fact, the Commission did not address Bumgarner's testimony or Greml-

3. The document the witness was consulting was admitted into the record and is the exhibit Employer asserts the Commission failed to consider in this point.

4. Whether this testimony or the report was considered hearsay by the Appeals Tribunal is unclear. Regardless, neither party alleges such on this appeal.

ing's report in its decision. Given the absence of contradictory evidence in the record before us, the Commission was not free to disregard the testimony and the report. *See Id.* A clear review of the whole record simply reveals that Claimant was told to move the display.

We note, however, a simple failure to follow instructions is not necessarily grounds for a finding that a claimant is disqualified for misconduct from unemployment compensation benefits. The Commission must consider whether Claimant's failure, as Employer argues in Point II, to follow that instruction implicates Section 288.050.2, which states in pertinent part:

> If a deputy finds that a claimant has been discharged *for misconduct connected with the claimant's work*, such claimant shall be disqualified for waiting week credit and benefits, and no benefits shall be paid nor shall the cost of any benefits be charged against any employer for any period of employment within the base period until the claimant has earned wages for work insured under the unemployment laws of this state[.]

(emphasis added).

It has been held that in order to be so disqualified, a claimant's work related "misconduct" must involve some form of willfulness. *Laswell v. Industrial Comm'n*, 534 S.W.2d 613, 616 (Mo.App. K.C.1976). The term "misconduct" has been said to include only:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard

of the employer's interest or of the employee's duties and obligations to the employer.

*Id.* (quoting 76 Am.Jur.2d, Unemployment Compensation § 52, p. 945).

Accordingly, we must reverse and remand that portion of the Commission's decision with instructions to make further findings as to whether Claimant's failure to follow Employer's instruction to move the display was willful or intentional as contemplated under Section 288.050.2.

In Point II, Employer also argues that, in addition to her alleged failure to follow instructions regarding the beef jerky display, that Claimant's failure to improve her cash register accuracy, inventory control, the cleanliness of the store and to set a good example for other employees during the probationary period constituted misconduct connected with her work.

Whether Claimant's conduct is considered misconduct in connection with her work is a legal question to which we do not defer to the Commission's determinations. *Dixon*, 106 S.W.3d at 540. Employer contends that because the occurrences herein recounted occurred after Claimant had been given warnings and an unsatisfactory evaluation in which she was placed on probation, her discharge resulted from more than mere incompetence; it was the result of Claimant's willful behavior as described in Section 288.050.2. We disagree.

The Appeals Tribunal found, in pertinent part:

> [C]laimant was not the only individual who used the cash register on her shift. The increase in the percentage of loss of inventory could have resulted from employee and/or customer theft, and/or inaccurate counting during the audits. [C]laimant was on vacation when the appearance of the store declined since the evaluation. [C]laimant came off va-

cation to order product that should have been ordered by other members of management while she was absent. [C]laimant had made suggestions about how improvements could be made to reduce theft, but these suggestions were ignored. [C]laimant reported employee theft.

. . . .

The concern about [C]laimant's example setting was that [C]laimant took off work early on September 29, 2004.[C]laimant left because she was ill.

While we defer to the Commission's view of the facts as stated above, its conclusion that each of these findings cannot form the basis for a determination that Claimant was disqualified from benefits for misconduct, is an application of the law to the facts which we review independently. *Dixon,* 106 S.W.3d at 540.

■ As Employer correctly points out, an employee can be found to have committed disqualifying misconduct under Section 288.050.2 for violating a reasonable work rule. *Hurlbut v. Labor & Industrial Relations Comm'n,* 761 S.W.2d 282, 285 (Mo.App. S.D.1988). However, Claimant reminds us that the burden to prove that this misconduct has taken place rests upon Employer. *Business Centers of Mo., Inc. v. Labor Industrial Relations Comm'n,* 743 S.W.2d 588, 589 (Mo.App. E.D.1988).

■ Employer must show by a preponderance of the evidence, Claimant's willful violation of Employer's rules. *Hoover,* 153 S.W.3d at 14. We agree that Employer has not met that burden in this case. A thorough review of the whole record reveals nothing more than negligence or poor judgment by the Claimant. We see nothing in the record to suggest that Claimant willfully or intentionally disregarded or violated Employer's rules.

As the Appeals Tribunal found, there was no evidence that Claimant stole from the cash register. To the contrary, there was evidence she shared a cash register with others, such that any mistakes could not be conclusively attributed to her. Likewise, there was testimony that the increase in lost products, which were cited as the inventory control problems by Employer, could have resulted from customer or employee theft. There was no evidence that Claimant caused, or failed to take steps to correct these losses. To the contrary, the Appeals Tribunal found that Claimant had taken affirmative steps to inform Employer of employee and customer theft and offered suggestions as to how to reduce the problem. Regarding the cleanliness of the store, the Appeals Tribunal found that Claimant was on vacation when the incidences of uncleanliness were attributed to her.

■ These facts may indicate that Claimant was a below average manager. However, as Claimant points out, while poor performance may justify an employee's discharge, it does not necessarily provide a basis for disqualifying Claimant from receiving unemployment benefits. *See Hoover* 153 S.W.3d at 14; *McClelland v. Hogan Personnel, L.L.C.,* 116 S.W.3d 660, 666 (Mo.App. W.D.2003); *Dixon,* 106 S.W.3d at 542. "Poor workmanship, lack of judgment or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct." *Hoover,* 153 S.W.3d at 13 (quoting *McClelland,* 116 S.W.3d at 665); *see also Dixon,* 106 S.W.3d at 542 (a persistent lack of attention to detail and accuracy essential to employers work did not constitute misconduct under Section 288.050.2). As such, this portion of the Commission's determination is affirmed.

Because we find that there was insufficient evidence to support the Commission's

finding that Claimant was not told to move the display, we reverse and remand the Commission's determination as to that issue only. Furthermore, should the Commission find that Claimant was instructed to move the display and failed to do so, it must also consider whether that failure constituted misconduct connected with her work under Section 288.050.2.

The judgment is affirmed in part and reversed in part.

SHRUM, P.J., and BARNEY, J., concur.