Gary MURPHY, Claimant–Appellant,

v.

AARON'S AUTOMOTIVE PRODUCTS,
Employer–Respondent,

and

Division of Employment Security,
Respondent.

No. 28271.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 6, 2007.

Appellant appears pro se.

No response by Employer or Division.

GARY W. LYNCH, Chief Judge.

Gary Murphy ("Claimant") appeals from a decision of the Labor and Industrial Relations Commission ("Commission") disqualifying Claimant for waiting week credit and benefits after Claimant's discharge from his employment with Aaron's Automotive Products ("Employer") on September 26, 2006, upon a finding that Claimant was discharged for misconduct connected with his work. We reverse and remand.

### (1) Factual and Procedural Background

Employer rebuilds automobile transmissions utilizing reclaimed parts. Claimant was employed March 1, 1999. Claimant's job for the year prior to his discharge entailed cleaning used solenoids and testing them to determine whether they can be reclaimed for remanufacturing. The cleaning process required soaking the part in a solvent and then hand washing, if necessary, to ensure that dirt and debris would not enter the testing machine. Once the part is sufficiently cleaned, it is tested in "a solenoid test machine." If the part is cracked, dented, or otherwise damaged, it is consigned to a scrap bin.

On Tuesday, September 26, 2006, Claimant returned to work after taking a vacation day on Monday. Claimant had not worked since the previous Thursday. In Claimant's absence, Employer's assistant supervisor, Tracy Lawson, pulled from a scrap bin five solenoids that appeared to him to be extremely dirty but not damaged. He believed these parts were salvageable, and he reported his findings to his supervisor. After further searching the scrap bin, he found twenty more solenoids in like condition.

When Claimant returned to work on Tuesday, he was asked what was wrong with the solenoids pulled by Lawson. Claimant explained that "there was nothing wrong with 'em other than they was dirty.'" Claimant's opinion was that the solenoids were so dirty and the oil was so burned into the finish that they could not be cleaned sufficiently to enable them to be tested. Claimant was suspended and ultimately discharged.

Initially, after Claimant filed for benefits with the Division of Employment Security ("Division"), the deputy found that because "employer failed to provide specific information when given the opportunity[,]" Claimant's "discharge was not for misconduct connected with work." Employer appealed, and a telephone hearing was held wherein Claimant and two representatives of Employer testified.

Claimant testified that he was performing his job according to the training he received and had asked for "work instructions" prior to his discharge, but none

were ever provided. Claimant maintained that if he had not been doing the job correctly, Employer had time to tell him how it should be done. He testified to the effect that he knew "what will come clean" and those solenoids that were "filthy dirty," with oil "burnt onto them, they will not come clean." If the solenoids would "not come clean," he threw them in the scrap bin, as he was told to do when he was trained for the job.

To clean the solenoids, Claimant stated they were put in a solvent and if necessary, hand-washed. As for the solenoids pulled from the scrap bin by Lawson, Claimant contended that after they were soaked in the solvent and still would not come clean, he knew they were so black with burned-on oil that they could not be cleaned in order to test them, and he threw them into the scrap bin.

Tracy Lawson testified that Claimant was discharged for "[t]hrowing away good parts, usable parts." When asked to "talk about [Claimant's] inspection[,]" Lawson stated, "He would clean 'em first.... They had to be cleaned[,] and then he would do a physical visual inspection, and then he would run 'em through the test machine." When Lawson was asked what Claimant should have done if he had already soaked the solenoid in the solvent and it was still dirty, Lawson stated, "[W]e have two wash systems that will-if it don't get it the first time, the second time it will. It's a Jacuzzi wash if you will, a big solvent tank that we put 'em in and soak 'em. And if that method does not work, then we have to scrub 'em by hand."

Dale Adams, Employer's "quality engineer technician" testified that the solenoids Lawson asked him to inspect were "real dirty," but had no damage. In describing what Claimant was supposed to do, Adams stated:

[T]hey clean 'em, they put 'em in a solution. They clean 'em. And then they put like—if they got a new—there's a new little rubber gasket on top. They got to put that in there if it needs it, check for cracks, dents or anything like that. And if they all look good after they've been cleaned and through the process, they put 'em in like what we call a—a solenoid test machine. And then they go from past there onto our ETMs.

The Appeals Tribunal reversed the deputy's initial determination which the Commission affirmed, adopting the tribunal's decision upon review. Therefore, when reviewing the order of the Commission, this Court examines the decision of the Appeals Tribunal. *White v. St. Louis Teachers Union*, 217 S.W.3d 382, 389 (Mo.App. 2007).

### (2) Procedural Deficiencies in Claimant's Brief

 Claimant appeals *pro se*. Neither the Division nor Employer filed a brief. Claimant contests the Commission's finding that he was discharged for misconduct connected with his work and contends that there was not competent and substantial evidence to support such a finding. Procedurally, Claimant's brief is defective, in that his jurisdictional statement is insufficient, the statement of facts and argument fail to include references to the record, and his points relied on are deficient. While we could dismiss Claimant's appeal on the basis of his failure to comply with the briefing requirements under Rule 84.04, "[i]n the interests of justice, however, we may decide points when their basis is cognizable from the argument section of the brief." *Crowe v. Clairday*, 893 S.W.2d 400, 402 (Mo.App.1995). "[W]hen possible[,] appellate courts prefer to address the merits of an appeal." *Bressler v. The*

*Wooten Co., L.L.C.*, 213 S.W.3d 240, 242 (Mo.App.2007). To ensure that there will be no manifest injustice, we choose to consider Claimant's appeal on the merits, *ex gratia. See Rodriguez v. Osco Drug,* 166 S.W.3d 138, 140 (Mo.App.2005).

### (3) Standard of Review

Appellate review of a decision by the Commission is governed by section 288.210. *Dixon v. Stoam Ind., Inc.,* 216 S.W.3d 688, 692 (Mo.App.2007). Section 288.210 provides that this Court may reverse, modify, set aside, or remand a decision by the commission only on the following grounds: (1) that the Commission acted without or in excess of its powers; (2) that the decision was procured by fraud; (3) that the facts found by the Commission do not support the award; or (4) that there was no sufficient competent evidence in the record to warrant making the award.

■ We will affirm the Commission's award "if there is sufficient competent and substantial evidence to support the award." *Peoples v. ESI Mail Pharmacy Servs., Inc.,* 213 S.W.3d 710, 711 (Mo.App. 2007). " 'Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record.' " *Dolgencorp, Inc. v. Zatorski,* 134 S.W.3d 813, 817 (Mo. App.2004), *quoting Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003).

■ Upon review, this court "is not bound by the Commission's conclusions of law or the Commission's application of law to the facts." *McClelland v. Hogan Personnel, L.L.C.,* 116 S.W.3d 660, 664 (Mo. App.2003). Whether the findings of the Commission support the conclusion that Claimant's behavior constituted misconduct is a question of law that we review independently. *Id.* "To the extent an appeal involves questions of law, no deference is given to the Commission." *Peoples,* 213 S.W.3d at 711. "We, however, must accept the Commission's judgment on the evidence and defer to the Commission on determinations regarding weight of the evidence and the credibility of witnesses." *Silman v. Simmons' Grocery & Hardware, Inc.,* 204 S.W.3d 754, 755 (Mo. App.2006).

■ Here, the Commission was charged with considering whether Claimant's failure to follow instructions implicates Section 288.050.1, which states, in pertinent part:

> If a deputy finds that a claimant has been discharged for *misconduct connected with the claimant's work,* such claimant shall be disqualified for waiting week credit and benefits, and no benefits shall be paid nor shall the cost of any benefits be charged against any employer for any period of employment within the base period until the claimant has earned wages for work insured under the unemployment laws of this state[.]

*Scrivener Oil Co., Inc. v. Div. of Employment Sec.,* 184 S.W.3d 635, 640 (Mo.App. 2006). In keeping with the policy of liberally construing Missouri's Employment Security Law to promote employment security, " 'disqualifying provisions in the law are strictly construed against the disallowance of benefits.' " *McClelland,* 116 S.W.3d at 664, *quoting Kennett Bd. of Pub. Works v. Shipman,* 15 S.W.3d 792, 795 (Mo.App. 2000).

### (4) Discussion

■ The employer bears the burden of proving misconduct. *Scrivener Oil Co., Inc.,* 184 S.W.3d at 641. Believing that Employer met this burden, the Commission concluded that Claimant's discharge

was for misconduct connected with his work. Whether the Commission's legal finding was sufficiently supported by the evidence is the issue before this Court.

"Misconduct" is defined under section 288.030.1(23), RSMo Cum.Supp.2006, as "an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]"

Under section 288.030.1(23), "each of the criteria for finding misconduct has an element of culpability or intent." *Bostic v. Spherion Atlantic Workforce,* 216 S.W.3d 723, 725 (Mo.App.2007). Further, "[i]t has been held that in order to be so disqualified, a claimant's work-related misconduct must involve some form of willfulness." *Scrivener Oil Co., Inc.,* at 640. *See also Hoover v. Cmty. Blood Ctr.,* 153 S.W.3d 9, 13 (Mo.App.2005).

▮▮▮ "Willful is defined as '[p]roceeding from a conscious motion of the will; voluntary; knowingly, deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary.' BLACK'S LAW DICTIONARY 1599 (6th ed.1990)." *McClelland,* 116 S.W.3d at 666. "To willfully disregard Employer's interests, Employee had to be aware of the requirement and knowingly or consciously violate it." *Id.*

▮▮▮ To find misconduct requires proof by a preponderance of the evidence that Claimant "willfully violated the rules or standards of employer" and that his "actions were not simply the result of poor workmanship, lack of judgment, or an inability to do the job." *Hoover,* 153 S.W.3d at 13. *See also McClelland,* 116 S.W.3d at 665. " 'Poor workmanship, lack of judgment[,] or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct.' " *Scrivener Oil Co., Inc.,* 184 S.W.3d at 641, *quoting Hoover,* 153 S.W.3d at 13. "[W]hile poor performance may justify an employee's discharge, it does not necessarily provide a basis for disqualifying Claimant from receiving benefits." *Scrivener Oil Co., Inc.,* 184 S.W.3d at 641. *See also Hoover,* 153 S.W.3d at 14. Absent evidence that Claimant deliberately or purposefully erred, he cannot properly be found to have committed an act of misconduct. *Hoover,* 153 S.W.3d at 14; *Dixon,* 106 S.W.3d at 542.

The Commission found that "claimant's failure to perform the two other cleaning steps prior to discarding the solenoids reflect a substantial disregard for the employer's interest and of reasonable standards of behavior which the employer had a right to expect of him." This finding is premised upon Lawson's testimony that the cleaning process consists of:

> "If they're still dirty at some point in time we have a—we have two wash systems that will—if it don't get it the first time, the second time it will. It's a Jacuzzi wash if you will, a big solvent tank that we put 'em in and soak 'em. And if that method does not work, then we have to scrub 'em by hand. That is the only way to get them off...."

In addition, Lawson testified that Claimant was "supposed to go through the whole process with all of them[.]" Thus, the Commission found that it was in Employer's interest and a reasonable standard of behavior which Employer had a right to expect that Claimant would wash each solenoid in solvent; if not then completely

clean, wash it in solvent a second time; and, if not then completely clean, hand clean it. Claimant testified that he did not follow this process on all solenoids because on those solenoids that had oil burned into the finish if the first wash did not get it clean, then, based on his experience, the second wash and the hand-cleaning also would not get it clean. Therefore, the Commission concluded that Claimant's failure to follow the Employer's stated process on all solenoids was misconduct connected with his work. The linchpin of this conclusion, however, is not what the Claimant was "supposed" to do with each solenoid, but rather, whether the Claimant knew what he was "supposed" to do and willfully disregarded it.

 "The term 'disregard' is defined as either 'an intentional slight' or 'neglect.' WEBSTER'S THIRD NEW INT'L. DICTIONARY 655 (1993)." *Dixon*, 106 S.W.3d at 541. "The context of the term 'disregard' in the definition of misconduct indicates, ... that disregard of the standards of behavior means 'an intentional slight.'" *Id.* "This meaning of the term 'disregard' is consistent with the other definitions of 'misconduct' and consistent with the holdings of cases utilizing the 'disregard of the standards of behavior which the employer has the right to expect of his employee' definition to find misconduct." *Id.*

The record is completely void of any evidence that Employer ever communicated to Claimant how he was "supposed" to process each solenoid. At no time did Employer claim, nor did any testimony establish that Claimant deliberately or purposefully did anything wrong or that he consciously intended to disregard the standard of behavior Employer had a right to expect. "Employer must show by a preponderance of the evidence, Claimant's willful violation of Employer's rules." *Scrivener Oil Co., Inc.*, 184 S.W.3d at 641. "To willfully disregard Employer's interests, [Claimant] had to be aware of the requirement and knowingly or consciously violate it." *McClelland*, 116 S.W.3d at 666.

At best, the evidence before the Commission showed that Employer had an expectation as to how Claimant was to perform his job and that Claimant failed to meet that expectation. Employer simply failed to carry its burden of proving that Claimant was aware of this expectation. Without evidence of such awareness, there is no substantial evidence supporting the Commission's conclusion that Claimant committed misconduct as defined under section 288.030.1(23). "Absent evidence that [Claimant] deliberately or purposefully committed these errors, [Claimant] cannot properly be found to have committed an act of misconduct." *Hoover*, 153 S.W.3d at 14. *See also Dixon*, 106 S.W.3d at 542.

### (5) Decision

The Commission's decision is reversed, and the case is remanded for calculation of the award Claimant is due.

BARNEY, J., and RAHMEYER, J., concur.