Dianne MATHEWS, Appellant,

v.

**B AND K FOODS, INC., and Missouri**
**Division of Employment Security,**
**Respondents.**

No. SD 30319.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 15, 2011.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 4, 2011.

Application for Transfer Denied
March 29, 2011.

James D. McNabb, Springfield, MO, for Appellant.

Larry R. Ruhmann, Jefferson City, MO, for Respondent Employment Security.

WILLIAM W. FRANCIS, JR., Judge.

Dianne Mathews ("Claimant") appeals the decision of the Labor and Industrial Relations Commission ("Commission") dis-

qualifying her from unemployment benefits because she committed misconduct connected with her work. We affirm the decision of the Commission.

### Facts and Procedural History

Claimant was employed as a floral manager by B and K Foods ("Employer") for approximately nine-and-one-half years. On July 15, 2010, Claimant's employment was terminated for submitting falsified timecard records that showed she was clocked in when in fact she had left the store to run a personal errand.

On July 17, 2010, Claimant filed for unemployment benefits with the Missouri Division of Employment Security ("Division"). Employer subsequently filed an official protest to the claim and included a copy of its "Employee Action Form" which stated Claimant "[left] the property on personal errands during scheduled work time without clocking out and turning in a payroll correction sheet[1] stating she took no lunch, which means she is to be paid as though she were working." Employer also filed three pages from its employee handbook—"EXAMPLES OF UNACCEPTABLE CONDUCT AND BEHAVIOR"—stating Employer will initiate termination for "[c]omitting a fraudulent act or breach of trust under any circumstances[ ]" or "falsification of any employment record[,] employment information, application for employment, expense reports, or any other company records."

Division's deputy determined that under the Missouri Employment Security Law Claimant was disqualified from receiving benefits because she was discharged for

---

1. The actual name of this form is "Payroll Correction" as evidenced by Exhibit 4 deposited with this Court. However, throughout the legal file, transcript and briefs, it is referred to and used interchangeably as the "form", "no lunch form", "payroll correction form", "no lunch sheet form" or more particularly the "no lunch sheet." For ease of reference, this Court adopts and uses the phrase "no lunch sheet" when referring to this document.

misconduct connected with her work. Claimant appealed Division's determination and a telephone hearing was conducted on September 29, 2009. Claimant and two witnesses for Employer testified.

Kevin Gerard, Employer's CEO and Corporate Secretary, testified employees were provided thirty minutes for lunch. Under the payroll system, thirty minutes was automatically deducted each day from an employee's work time to allot for lunch. A "no lunch sheet" is used in instances where an employee was "not able to clock out for lunch because they worked straight through...." Managers are required to take their lunch break every day, but are permitted to work during their lunch and turn in a "no lunch sheet" if necessary. The purpose for allowing managers to do this is they are often interrupted during lunch and are required to return to work in order to respond to questions or address issues that arise in their departments. If a manager turned in a "no lunch sheet," payroll would add thirty minutes back to the manager's work time to compensate the manager for those thirty minutes of time.

Mr. Gerard also testified he felt Employer had no choice but to terminate Claimant because she was in a position where her employees were looking up to her and

> she was turning in no lunch [sheets], she was making sure that everybody did take their lunches, was making sure they were getting charged if they did not take a lunch, and her employees were aware of the fact that she had left the store, turned in a no lunch [sheet] and was basically paid for time that she was not in the store....

Mr. Gerard also explained that

> nowhere in any of our policies does it say that ... you're allowed to leave the store on a lunch break, especially if you turn in a no lunch [sheet] ... and we just can't have our managers when they have half a dozen employees under them ... trying to hold [them] accountable for their jobs doing something that directly violates one of our policies and makes it difficult for us to enforce that lunch policy when the manager them self [sic] isn't doing it....

Margie Brown, Employer's Director of Human Resources, testified the policies in the Employer's handbook have been in effect since June 2004. She testified that on October 7, 2004, Claimant attended an "employee handbook orientation" and each attendee was required to sign a sheet verifying attendance at the meeting. Ms. Brown testified Claimant also attended a "handbook refresher meeting" on March 21, 2007, and again was required to sign a sheet verifying attendance. Ms. Brown also explained that a few days prior to Claimant's discharge, Employer became aware Claimant had left the store on occasion while remaining clocked in.

Claimant admitted attending the handbook orientation meetings, but denied she was ever given a copy of the employee handbook. Claimant testified she was familiar with Employer's "no lunch sheet" and admitted that during 2009, it was her practice to not take a lunch break every day and complete and turn in a "no lunch sheet" for each day.

Claimant testified that on July 7, 2010, she left the store to go "sign some papers for [her] son" and completed a "no lunch sheet" for that day. She left the store around noon and was gone for approximately one hour. At Claimant's termination meeting, Claimant did not mention part of her absence on July 7, 2010, was spent doing price comparisons for Employer, as she alleged at the hearing.

Claimant also explained that approximately two years prior to her discharge, an employee named "Reba"—who was higher in authority than Claimant—told her it was unnecessary to adjust her timecard when she ran a personal errand for a few minutes.

On October 5, 2009, the Appeals Tribunal ("Tribunal") affirmed Division's determination that Claimant was disqualified from benefits. Claimant subsequently appealed the Tribunal's ruling to the Commission. On December 10, 2009, the Commission issued its order affirming the Tribunal's decision and adopting the Tribunal's decision as the decision of the Commission. This appeal followed.

Claimant contends the Commission erred in adopting the Tribunal's decision by concluding she committed misconduct in connection with her work. The Division contends the finding of the Commission is correct. The sole issue presented for our determination is whether Claimant's conduct at work was sufficient to support a finding of misconduct, which would disqualify her from unemployment benefits.

## Standard of Review

Our review of the Commission's decision is governed by section 288.210.[2] *Dixon v. Stoam Industries, Inc.,* 216 S.W.3d 688, 692 (Mo.App. S.D.2007). Section 288.210 provides that this Court may reverse, modify, set aside or remand a decision by the Commission only on the following grounds:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award. . . .

We will affirm the Commission's award " 'if there is sufficient competent and substantial evidence to support the award.' " *Murphy v. Aaron's Automotive Products,* 232 S.W.3d 616, 620 (Mo.App. S.D.2007) (quoting *Peoples v. ESI Mail Pharmacy Servs., Inc.,* 213 S.W.3d 710, 711 (Mo.App. E.D.2007)). "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003).

We are " 'not bound by the Commission's conclusions of law or the Commission's application of law to the facts.' " *Murphy,* 232 S.W.3d at 620 (quoting *McClelland v. Hogan Personnel, L.L.C.,* 116 S.W.3d 660, 664 (Mo.App. W.D.2003)). The issue of whether Claimant's behavior constituted misconduct is a question of law we review independently. *Id.* To the extent this appeal involves questions of law, no deference is given to the Commission. *Id.* " 'We, however, must accept the Commission's judgment on the evidence and defer to the Commission on determinations regarding weight of the evidence and the credibility of witnesses.' " *Murphy,* 232 S.W.3d at 620 (quoting *Silman v. Simmons' Grocery & Hardware, Inc.,* 204 S.W.3d 754, 755 (Mo.App. S.D.2006)).

## Analysis

"Misconduct" which would disqualify an employee from unemployment benefits is defined as:

[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the

---

2. All references to statutes are to RSMo 2000, unless otherwise indicated.

employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

Section 288.030.1(23).

■ "'Work-related misconduct' must involve a willful violation of the rules or standards of the employer." *West v. Baldor Elec. Co.,* 326 S.W.3d 843 (Mo.App. E.D.2010). "'Willful is defined as proceeding from a conscious motion of the will; voluntary; knowingly[;] deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary.'" *Murphy,* 232 S.W.3d at 621 (quoting BLACK'S LAW DICTIONARY 1599 (6th ed.1990)) (internal quotation omitted). To willfully disregard Employer's interests, Claimant first had to be aware of the requirement, and then knowingly or consciously violate it. *Id.*

■ The employer bears the burden of proving misconduct. *Scrivener Oil Company, Inc. v. Division of Employment Security,* 184 S.W.3d 635, 640 (Mo.App. S.D. 2006).

■ In adopting the decision of the Tribunal, the Commission found "[t]he claimant took the affirmative action to report that she had taken no lunch period on July 7, 2009, when in fact she was away from the workplace from 12 noon until 12:50 p.m." The Commission then went on to find Claimant knowingly falsified her time report and that conduct by Claimant "disregarded the [E]mployer's interest and the standards of behavior which the [E]mployer had a right to expect of her." We find the Commission's decision that Claimant's behavior constituted misconduct is supported by sufficient competent and substantial evidence in the record, including the testimony of Mr. Gerard, Ms. Brown, and by testimony of Claimant herself.

Claimant's sole point on appeal argues error in finding Claimant's errand was "willful or a deliberate violation of the employees [sic] rules or standards" because she believed her conduct was warranted. She bases her claim on the fact the Commission found "[a]pproximately two years prior to the [C]laimant's discharge, a person higher in authority had told her that she need not adjust her time records when she ran a personal errand for a few minutes." The evidence in the record and the Commission's findings simply do not support Claimant's position.

Substantial evidence supported a finding that Claimant's conduct of falsifying her timecard record by turning in a "no lunch sheet" for time she had left the store to run a personal errand was a willful or deliberate violation of Employer's policy. First, Claimant herself testified she was familiar with the "no lunch sheet" and verified it was her practice during 2009 not to take a lunch break every day and to complete and turn in a "no lunch sheet" for each day. The "no lunch sheet" allowed managers to be compensated for *working* through their lunch breaks. Additionally, as a manager, Claimant was responsible for enforcing Employer's lunch policy with her subordinate employees. Mr. Gerard testified they had no choice but to terminate Claimant because she was in a higher position and had a responsibility to enforce the lunch policy. Thus, Claimant was well aware of Employer's lunch policy when she made the affirmative choice to turn in a "no lunch sheet" for the time she spent running a personal errand.

To support her position, Claimant relies on *Kennett Board of Public Works v. Shipman,* 15 S.W.3d 792 (Mo.App. S.D.2000), where this Court found the claimant's con-

duct of trading comp time and vacation time with other employees did not constitute misconduct. In *Kennett*, this Court relied on the fact the Commission had found "[t]he employer had an histori[c]al practice of allowing [its] employees ... to trade around comp time and vacation time so they could perform personal duties for one another...."[3] *Id.* at 796 (internal quotation omitted). This case, however, is distinguishable from *Kennett.* Here, the Commission did not find Employer had a historical practice of allowing employees to remain on the clock and file "no lunch sheets" while running personal errands away from the store, and no evidence in the record supports such a practice existed.[4] To the contrary, Employer demonstrated through testimony of Claimant, Mr. Henson, Ms. Brown, and company records that Claimant knew the policy for turning in a "no lunch sheet."

Claimant also relies on *Murphy,* where this Court held there was no substantial evidence supporting Commission's conclusion that the claimant committed misconduct because the employer failed to carry its burden of proving the claimant was aware of the employer's policy for cleaning solenoids where claimant was discharged for failing to perform two additional cleaning steps before discarding solenoids. 232 S.W.3d at 622. Unlike the case before us, the record in *Murphy* was "completely void of any evidence that [e]mployer ever communicated to [c]laimant how he was 'supposed' to process each solenoid." *Id.* Here, Claimant's knowledge of Employer's "no lunch sheet" policy is especially apparent because Claimant herself testified to her familiarity with it and she was responsible for enforcing the policy regularly with employees under her direct supervision.

Claimant's actions of turning in "no lunch sheets" and thereby claiming pay status for time she was out of the store conducting personal errands were a direct violation of Employer's policy. Claimant's conduct goes beyond a mere lack of judgment as evidence established she knew her behavior was inappropriate and against Employer's interest. The record shows it was Claimant's responsibility as the floral manager to make sure other employees properly reported their lunch breaks and Claimant further admitted she was familiar with the "no lunch sheet" and utilized it on a daily basis. Claimant's intentional conduct constituted a willful disregard of the standards of behavior which Employer had a right to expect of an employee and, therefore, was misconduct under section

---

**3.** The Commission in *Kennett* also found:

Though the employer was uncomfortable with not knowing for sure that a particular employee actually worked at the employer's work site for the hours shown for each pay period the employer never advised [Shipman] or his coworkers during the period of [Shipman's] employment that the comp and vacation time switching practice was improper or disallowed. [Shipman] as well as his coworkers utilized the employer's facilities to do repairs on their personal property as was allowed by the employer's policies. *Id.* at 797.

**4.** Claimant has not proven a historical practice; rather, she simply testified that a coworker, in a casual encounter with Claimant when Claimant was about to leave the store to run a personal errand, allegedly told Claimant it was "no big deal" if she did not punch in or out to run a quick errand. This single occurrence from over two years ago does not constitute evidence of a historical practice. Additionally, even if we were to find the comment that she need not adjust her time records when she ran a personal errand for a few minutes to be evidence of a historical practice, it is unlikely this extensive errand would qualify as "a personal errand for a few minutes" when the Commission found she spent approximately thirty minutes on a personal errand out of the hour she was away from the store.

288.030.1(23). We conclude Claimant's conduct at work was sufficient to support a finding of misconduct in order to disqualify her from unemployment benefits. Accordingly, we affirm the decision of the Commission.

SCOTT, C.J., and BATES, J., Concur.