Dawn **RICHARDSON**, Appellant,

v.

**DIVISION OF EMPLOYMENT SECURITY**, Respondent.

No. WD 73076.

Missouri Court of Appeals, Western District.

Nov. 15, 2011.

Dawn Richardson, Appellant pro se.

Bart A. Matanic, for Respondent.

Before Division Three: JAMES E. WELSH, Presiding Judge, JAMES M. SMART, JR., Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Dawn Richardson ("Claimant") appeals from an order issued by the Labor & Industrial Relations Commission disqualifying her from receiving unemployment benefits for five weeks based upon a finding that she was terminated from her employment with Seniortrust of Columbia, LLC ("Seniortrust") for misconduct related to work. For the following reasons, the Commission's decision is reversed and remanded for further proceedings.

Claimant was employed by Seniortrust in Columbia, Missouri as a certified nurse's aide at a nursing home from July 26, 2007, until April 8, 2010. On the night of April 7, 2010, Claimant was the sole person assigned to work the 10 p.m. to 6 a.m. shift in the Alzheimer's unit. She had just arrived home from an automobile trip to Virginia at 8:00 p.m. After she had an allergic reaction to some seafood, including swelling of her throat, Claimant tried to call in sick, but was told by her supervisor that, pursuant to Seniortrust policies, she could not call in sick that close to the start of her shift. Claimant took some Benadryl to counter the allergic reaction and reported to work for her shift.

When the Director of Nursing, Jackie White, came by the unit during Claimant's shift, Claimant was asleep behind the desk. After waking Claimant, which took considerable effort, White told Claimant that sleeping on the job was unacceptable. As she was leaving for the evening, White instructed the nighttime supervisor, Amy Cunningham, to check on Claimant later to make sure she was not sleeping on the job. Later that night, when Cunningham checked on the Alzheimer's unit, she found Claimant again asleep at her desk and notified White of that fact. Cunningham sent Claimant home, and the following day, White discharged Claimant.

Later that day, Claimant filed a claim for unemployment benefits. On April 21, 2010, Senior Trust filed its letter of protest, asserting that Claimant had been discharged for misconduct related to work because she was sleeping on the job. On April 27, 2010, a deputy for the Division of Employment Security issued his determination that Claimant should be disqualified from unemployment benefits for five weeks because she had been discharged for misconduct connected with work when she was caught sleeping at work.

Claimant filed an appeal of the deputy's determination with the Appeals Tribunal. A hearing was conducted on Claimant's claim on June 17, 2010. The Appeals Tribunal subsequently issued its decision concluding that Claimant had been discharged from her employment for misconduct related to work for reporting to work without proper rest and under the influence of medication. On September 10, 2010, the Commission affirmed the decision of the Appeals Tribunal and adopted that decision as its own.

In her sole point on appeal, Claimant asserts that the Commission's finding that she was discharged for misconduct was not supported by the evidence. She contends that her sleep was the result of an involuntary reaction to Benadryl and that she had been told to take that drug by her supervisor.

■■■ Our review of the Commission's decisions is governed by § 288.210 which states:

> The findings of the commission as to facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the

decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

"We will affirm the Commission's decision if we find, upon a review of the whole record that 'there is sufficient competent and substantial evidence to support the [Commission's decision].'" *Higgins v. Missouri Div. of Employment Sec.*, 167 S.W.3d 275, 279 (Mo.App. W.D.2005) (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)). "[W]e defer to the Commission on issues involving the credibility of witnesses and the weight to be given to their testimony." *Martinez v. Nationwide Paper*, 211 S.W.3d 111, 115 (Mo.App. S.D.2006) (internal quotation omitted). "However, we owe no deference to the Commission's conclusions of law or application of the law to the facts." *Higgins*, 167 S.W.3d at 279.

 "Pursuant to § 288.050.2, if an individual is fired for misconduct connected with his or her work, that individual may be denied employment security benefits for four to sixteen weeks." *Peck v. La Macchia Enters.*, 202 S.W.3d 77, 80 (Mo. App. W.D.2006) (internal quotation omitted). Section 288.030.1(23) defines "misconduct" as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design,

or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.

"Work-related misconduct must involve a willful violation of the rules or the standards of the employer." *Mathews v. B & K Foods, Inc.*, 332 S.W.3d 273, 277 (Mo. App. S.D.2011) (internal quotation omitted). "Willful misconduct can be established when a claimant, either by action or inaction, consciously disregards the interest of the employer or behaves in a way that is contrary to that which an employer has a right to expect from an employee." *West v. Baldor Elec. Co.*, 326 S.W.3d 843, 847 (Mo.App. E.D.2010). "In general, a claimant bears the burden of demonstrating that he or she is entitled to unemployment benefits; however, when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work." *Peck*, 202 S.W.3d at 80. Ordinarily, "an employee's conduct off the working premises or outside the course or scope of his or her employment is not considered as misconduct in connection with employment." 81 C.J.S. *Social Security & Public Welfare* § 398 (2004).

The Commission rested its decision on findings that traveling all day before reporting to work, thereby reporting to work insufficiently rested, and using allergy pills constituted misconduct because Employer had a right to expect its employees would not engage in such activities and that those actions demonstrated substantial disregard of Claimant's obligation to Employer.

 As to taking Benadryl, Claimant testified that she had an allergic reaction to seafood and felt like her throat was swelling shut. The Commission found that

testimony credible.[1] Having found that Claimant was suffering from an allergy attack, the Commission could not reasonably conclude that Claimant committed an act of misconduct by treating that condition with medication, absent evidence and a finding that Claimant was aware that her use of that medication would compromise her ability to perform her work duties[2] and that an acceptable, alternative treatment was available, particularly when failing to treat allergies can, in some instances, compromise an employee's ability to work. Moreover, the Commission does not indicate how Claimant's act of taking an allergy pill at home can be deemed to be connected with her work.[3]

As to the Commission's finding that Claimant reported to work without proper rest, the evidence does not establish that Claimant got significantly less sleep than usual as a result of her trip home from Virginia or that she was more tired than usual as a result of that trip. The record does not reflect when Claimant arose to travel that day, whether anyone was traveling with Claimant, or whether Claimant was able to sleep during the trip. Moreover, even if it were proper to infer that Claimant woke especially early and drove all the way from Virginia by herself, the evidence does not establish that Claimant had reason to know that her travel would significantly compromise her ability to stay awake during her shift or that she would have otherwise fallen asleep absent the ingestion of the Benadryl. And, again, the Commission's decision does not explain how Claimant's driving across the country in her off-time, or her sleeping habits in general, can be deemed to be connected with her work.

The Commission's conclusions that Claimant was guilty of misconduct related to work for taking Benadryl and for not being rested when reporting to work are clearly erroneous. As noted *supra*, [o]rdinarily, "an employee's conduct off the working premises or outside the course or scope of his or her employment is not considered as misconduct in connection with employment." 81 C.J.S. *Social Security & Public Welfare* § 398 (2004); *see also Miller v. Kansas City Station Corp.*, 996 S.W.2d 120, 125–26 (Mo.App. W.D. 1999). Had Employer discharged claimant as soon as she reported for work, we would certainly not be able to conclude that these actions were misconduct connected to Claimant's work.

■ This leads us to the real issue in this case, but unfortunately, one which the Commission failed to address. The work-connected conduct for which Claimant was actually fired was falling asleep on the job. This was the sole reason for her discharge

1. Claimant also testified that she attempted to call in sick due to her allergy attack but that her direct supervisor had told her to take some Benadryl and report to work. We need not rely on this testimony, to which the Commission did not refer, in reversing the Commission's decision. Certainly, however, if Claimant were found to have taken the allergy medicine at the direction of her supervisor, Claimant's actions could not be deemed to be misconduct, as she would have been following the instructions of her employer.

2. Indeed, while Claimant testified that she thought the Benadryl had made her drowsy, no evidence was presented at the hearing as to whether that was an ordinary, or even abnormal, side effect of the medication or that Benadryl was known to impair workers in any way.

3. A connection to Claimant's work could have been established if the Commission deemed credible Claimant's testimony that she took the Benadryl at the direction of her supervisor; however, Claimant's actions could not be deemed misconduct if she were following her employer's instructions.

asserted by Employer, and Claimant conceded that she fell asleep at her post; however, the Commission failed to address in its decision whether Claimant's falling asleep at work was misconduct. In this regard, it is important to remember that Employer unquestionably was justified in terminating Claimant's employment after having found her sleeping on the job. However, "[w]hether an employer has solid grounds to terminate an employee is not the same issue as whether the former employee qualifies for compensation." *Hoover v. Community Blood Ctr.*, 153 S.W.3d 9, 13 (Mo.App. W.D.2005). In order for a denial of benefits to be proper, Employer was required to prove that Claimant's falling asleep on the job was "misconduct" under § 288.030.1(23).

Until recently, no Missouri case had addressed whether falling asleep at work constitutes misconduct sufficient to warrant a denial of unemployment benefits. While this case was under submission, however, the Eastern District of this Court handed down *Nickless v. Saint Gobain Containers, Inc.*, 350 S.W.3d 871, 873 (Mo. App. E.D.2011), proclaiming that "the idea that sleeping on the job is anything other than misconduct is absurd." The *Nickless* court held, without the benefit of any significant analysis, that sleeping on the job constituted a "conscious disregard" of the employer's right to expect employees to be conscious during their scheduled shifts. *Id.* at 874. The court essentially held that falling asleep on the job was misconduct *per se* and left little room for the consideration of the circumstances surrounding the incident.[4]

Having reviewed the applicable statutory language and case law from other jurisdictions, we conclude that the better reasoned approach is that, while sleeping on the job certainly can constitute misconduct related to work in many, if not most, situations, such a determination is dependent on the facts and circumstances of each case. As noted *supra*, in order for benefits to be withheld from an employee, the employer must prove that the employee was discharged for misconduct. "Work-related misconduct must involve a willful violation of the rules or the standards of the employer." *Mathews*, 332 S.W.3d at 277 (internal quotation omitted). "Willful misconduct can be established when a claimant, either by action or inaction, consciously disregards the interest of the employer or behaves in a way that is contrary to that which an employer has a right to expect from an employee." *West*, 326 S.W.3d at 847. Certainly not all instances where an employee loses consciousness at work can be deemed to have involved a conscious decision by the employee or is the result of conscious behavior,[5] and the circumstances surrounding the incident should be considered.

This approach is consistent with that taken in other jurisdictions. In *Brandon v. Lockheed Martin Corp.*, 872 So.2d 1232, 1241 (La.App.2004), the Louisiana Court of Appeals noted that, "[s]imilar to the Louisiana jurisprudence, the out-of-state jurisprudence has likewise recognized that sleeping on the job may or may not constitute misconduct depending upon the circumstances of the case." The court concluded that multiple factors need to be considered in making that deciding wheth-

---

4. *Nickless* created a limited exception where the employer or profession as a whole allows sleeping on the job. *Nickless*, 350 S.W.3d 874, n. 2.

5. For example, an employee may be suffering from narcolepsy, a medical condition which causes recurrent, uncontrollable episodes of sleep. *Dorland's Illustrated Medical Dictionary* 1101 (28th ed.1994).

er sleeping on the job constitutes misconduct, including the nature of the employee's job responsibilities, the location where the employee fell asleep, the employer's policy related to sleeping on the job, whether prior warnings had been given to the employee, and any other aggravating or mitigating circumstances. *Id.* at 1241–42. After considering those factors, the court determined that the employer had failed to meet its burden of proving misconduct where the evidence showed at most that the employee negligently fell asleep after a sinus headache caused him to take off his glasses and place his head on his desk. *Id.* at 1243.

In *Fairview Hospital & Training Center,* 28 Or.App. 637, 560 P.2d 671, 673 (1977), the Oregon Court of Appeals held that falling asleep at work due to a medical problem and/or medication taken therefore did not constitute misconduct. Similarly, in *Washington v. Board of Review,* 211 Ill.App.3d 663, 156 Ill.Dec. 90, 570 N.E.2d 566, 570 (1991), the Illinois Court of Appeals found no misconduct by a secretary who had fallen asleep during a board meeting after taking an aspirin for a headache, and in *Lusby v. Unemployment Appeals Commission,* 697 So.2d 567, 568–69 (Fla. App.1997), the Florida Court of Appeals held that an employee that fell asleep on the job on one occasion, apparently due to medicine he had taken, was not guilty of misconduct. In *Peninsula United Methodist Homes, Inc. v. Darby,* C.A. No. 95A–09–001, 1996 WL 191397, at *2, 1996 Del.Super. LEXIS 117, at *5 (Del.Super.Ct. April 4, 1996), the Superior Court of Delaware held that a nurse who fell asleep for a few minutes while propping up an injured toe was not hiding or purposely napping so as to constitute misconduct. The court noted that "a single incident of falling asleep while under some physical disability does not constitute willful or wanton misconduct." *Id.*

In addressing a situation not involving illness or medication, in *Wedgewood v. Director of the Division of Employment Security,* 25 Mass.App.Ct. 30, 514 N.E.2d 680, 682 (1987), the court held that, while sleeping on the job may constitute misconduct in willful disregard of an employer's interest, "each such case must be examined individually in light of any mitigating circumstances." Specific to that case, the court held that an employee who was going through a divorce and was the sole caregiver for his two elderly, seriously-ill parents with whom he lived, was not guilty of misconduct in willful disregard of his employer's interest when he fell asleep at work on several occasions. *Id.* at 683. In so holding, the court noted that "serious personal problems causing an employee to be unusually fatigued at a particular period in his life may constitute such substantial and relevant mitigating factors as to prevent his sleeping on the job from being considered deliberate misconduct in willful disregard of his employer's interest." *Id.*

Courts have also considered whether the actions of the employer caused or contributed to the employee being susceptible to involuntarily falling asleep. For instance, in *Pilgrim Manor Nursing Home, Inc. v. Gerace,* 337 So.2d 660, 663 (La.App.1976), the Louisiana Court of Appeals found that a nursing aid's conduct did not constitute misconduct where she had fallen asleep on the job after having been called in by her employer at the last minute to work the night shift on her day off. In *Philadelphia Parking Authority v. Unemployment Compensation Board of Review,* 1 A.3d 965, 968–69 (Pa.Commw.2010), the Commonwealth Court of Pennsylvania considered the employee's actions in light of all the circumstances and held that the employer failed to prove misconduct where the employee informed the employer of her sleep apnea problem and attempted to

resolve her drowsiness problem in a responsible manner.[6]

On the other hand, courts have held that evidence that a worker had been warned after repeated instances of falling asleep or that the employee had hidden or otherwise created an environment conducive to sleeping sufficiently established misconduct. *See Allen v. Sumrall*, 398 So.2d 108, 110–11 (La.App.1981) (evidence that a previously warned employee was sleeping in a room with the lights out established misconduct); *Auger v. Gillette Co.*, 303 N.W.2d 255, 257–58 (Minn.1981) (considering the circumstances and finding misconduct established where employees were sleeping in a locker room on cardboard pads, both had pillows, one had a blanket, and one had an alarm clock).

Having considered the case law from other jurisdictions and in light of the simple fact that circumstances can play a role in causing an employee to lose consciousness, we conclude that each case should be decided on its own merits, considering all the facts and circumstances. Thus, consistent with Missouri cases dealing with employees discharged based upon violation of an attendance policy, we conclude that "misconduct analysis allows the circumstances of the [situation] to be considered" in cases involving employees falling asleep at work.[7] *Johnson v. Division of Emp't Sec.*, 318 S.W.3d 797, 805 (Mo.App. W.D. 2010). To the extent *Nickless* suggests or holds that falling asleep at work is misconduct *per se*, and/or that the surrounding circumstances are otherwise irrelevant, we decline to follow it.

Some factors that may be particularly relevant in assessing whether a sleeping employee is guilty of misconduct are (1) the nature of the employee's job responsibilities, (2) the location and position in which the claimant was found sleeping, (3) the presence or absence of a written rule prohibiting sleeping on the job, (4) whether the claimant had received prior warnings for sleeping on the job, and (5) any other aggravating or mitigating circumstances surrounding the incident. *Brandon*, 872 So.2d at 1241–42; *see also* 76 Am.Jur.2d *Unemployment Compensation* § 94 (2005). This last factor, aggravating or mitigating circumstances, could include, without limitation, whether sleep might have been induced by medication or illness.

Because the Commission failed to determine whether Claimant's falling asleep on the job constituted misconduct and because making that assessment requires resolution of disputed factual issues and weighing of the evidence not reflected in the decision, the cause is reversed and remanded to the Commission for further proceedings consistent with this opinion. *Munson v. Division of Employment Sec.*, 323 S.W.3d 112, 115 (Mo.App. W.D.2010).

All concur.

---

6. *Philadelphia Parking Authority* further noted that physical illness could constitute good cause for falling asleep on the job. *Philadelphia Parking Auth.*, 1 A.3d at 968.

7. Indeed, it would make little sense to significantly differentiate our treatment of an individual negligently dozing off at work from one who negligently fails to show up at work and sleeps through his shift.