Leon FINNER, Claimant–Appellant,

v.

AMERICOLD LOGISTICS, LLC, Employer, and Division of Employment Security, Respondents.

No. SD 29363.

Missouri Court of Appeals,
Southern District,
Division One.

Nov. 30, 2009.

Joseph L. Hensley of Joplin, MO, for Appellant.

Jeannie Desir Mitchell of Jefferson City, MO, for Respondent.

Employer acting pro se.

JEFFREY W. BATES, Judge.

Leon Finner (Employee) appeals from a decision by the Labor and Industrial Relations Commission (the Commission) denying his claim for unemployment benefits pursuant to Missouri's Employment Security Law, §§ 288.010–.500 RSMo (2000).[1] The Commission decided Employee was not entitled to such benefits because he had been discharged for misconduct connected with his work, as defined by § 288.030.1(23). On appeal, Employee contends the Commission's decision was not supported by the evidence. This Court affirms.

## I. Standard of Review

The scope of appellate review of the Commission's decision is limited by constitutional provision and by statute. Article V, § 18 of the Missouri Constitution directs this Court to determine whether the Commission's decision is "authorized by law" and whether it is "supported by competent and substantial evidence upon the whole record." *Albanna v. State Bd. of Registration for Healing Arts*, 293 S.W.3d 423, 428 (Mo. banc 2009). In pertinent part, § 288.210 RSMo (2000) states:

> Upon appeal no additional evidence shall be heard. The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other: (1) That the commission acted without or in excess of its powers; (2) That the decision was procured by fraud; (3) That the facts found by the commission do not support the award; or (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

*Id.* In determining whether the Commission's decision is authorized by law, we are not bound by its conclusions of law or its application of law to the facts. *Shelby v. Hayward Baker, Inc.*, 128 S.W.3d 164, 165–66 (Mo.App.2004). This Court independently reviews such questions without giving any deference to the Commission's conclusions. *Ross v. Whelan Sec. Co.*, 195 S.W.3d 559, 563 (Mo.App.2006). This Court does defer to the Commission's determinations on matters of witness credibility and the resolution of conflicting evidence. *Coyne v. Cargill, Inc.*, 167 S.W.3d 800, 801–02 (Mo.App.2005).

---

1. Unless otherwise specified, all further references to statutes are to RSMo Cum.Supp. (2008).

## II. Statement of Facts and Procedural History

In March 2003, Americold Logistics, LLC (Employer) adopted a new safety program due to the escalating number of accidents that had taken place in prior years. The goal of the program was to provide a safe workplace for all employees. Employer wanted safety to be the top priority of every employee. To enforce this new safety policy, Employer adopted a three-strike program requiring the termination of any employee who had three safety violations in a 12–month period. In a letter notifying employees about the new safety policy, Employer stated that the three-strike program "means clearly and without exception that any employee who violates a safety rule or practice is given a warning on the first offense, a final warning on the second offense and is automatically discharged on the third offense."

In July 2004, Employer hired Employee to work as a forklift operator. When Employee was hired, he was told about Employer's three-strike program. Employer's new hire orientation checklist, which Employee initialed, stated that he had been given a copy of the safety rules for forklift operators. One of these safety rules prohibited an employee from driving a forklift through a doorway forks first. The purpose of this safety rule was to protect other employees from being struck by the forklift or impaled on the forks. Another safety rule required a forklift operator to check overhead clearance and be familiar with the location of pipes, wiring or other obstructions. Employee also was aware of an OSHA regulation requiring

him to wear a seatbelt while operating his forklift.

On December 19, 2007, Employee failed to wear his forklift seatbelt while loading a truck. Pursuant to the three-strike program, he was given a warning via a written safety violation disciplinary form.

On February 12, 2008, Employee was loading a truck with cargo located in the freezer. Employee was not supposed to go into the freezer with his forklift. He also knew that he was not supposed to enter a doorway forks first. Nevertheless, he decided to disobey this safety rule because he did not think anyone was in the freezer, and the cargo was located close to the door. Employee's action was observed by another employee. Employee received a second safety violation disciplinary form, which advised him that he had received his final warning about safety violations.[2]

On February 28, 2008, Employee was using his forklift to load a trailer. Employee placed one load of product inside the trailer without incident. When Employee entered the trailer a second time, the forklift struck and damaged an air conditioning unit located on the ceiling. Employee was immediately suspended pending an investigation of the incident. Employer's investigation revealed that a roll of plastic wrap located on top of Employee's forklift had hit the air conditioning unit and caused the damage. With the wrap on top of the forklift, it was too tall to clear the air conditioning unit. On March 7, 2008, Employer terminated Employee. The third safety violation disciplinary form stated that Employee had taken "an unsafe position because he was

---

**2.** In relevant part, the disciplinary form stated: "[Employee] was witnessed by [co-employee] Tom Stevens driving forks first throught [sic] 71G–lane door at the DC. Tom confronted [Employee] about this, and [Employee] apologized for doing it. Tom explained to [Employee] that he cannot ignore the safety violation, and instructed [Employee] to notify Gary Simmons about his violation."

not aware of his surroundings, particularly his overhead clearance."

A few days later, Employee filed a claim for unemployment benefits. Employer filed a written protest on the ground that Employee had been discharged for receiving three safety violations within a 12–month period. Employer claimed that Employee was not eligible for benefits because he had violated a reasonable and known safety policy. A deputy decided that Employee was eligible to receive benefits because he had not been discharged for misconduct connected with work. Employer appealed that decision to the Appeals Tribunal. An appeals referee conducted two hearings at which evidence concerning all three safety violations was received from Employer's witnesses and Employee. During Employee's testimony, he conceded that he was not taking issue with either of the first two safety violations he received. The Appeals Tribunal reversed the deputy's decision and determined that Employee was disqualified for benefits because he had been discharged for misconduct connected with work. The referee found that Employee had been discharged for receiving three safety violations in a three-month period. The referee made a factual finding that "[t]he first two were known safety violations of which [Employee] was guilty. The third was an act of carelessness wherein [Employee] did not exercise proper care to ensure that he did not collide the forklift into an air conditioning unit." The referee concluded that this pattern of behavior constituted misconduct. Employee filed an application for review. The decision of the Appeals Tribunal was unanimously affirmed by the Commission and adopted as its decision. This appeal followed.

### III. Discussion and Decision

■ A claimant is disqualified from receiving unemployment benefits if he or she has been discharged for misconduct connected with work. § 288.050.2. Employer asserted that defense here and bore the burden of proving it by a preponderance of the evidence. *Freeman v. Gary Glass & Mirror, L.L.C.*, 276 S.W.3d 388, 391 (Mo. App.2009). Misconduct is defined as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

§ 288.030.1(23). Each of the foregoing criteria for finding misconduct involves an element of intent or culpability. *Murphy v. Aaron's Automotive Products*, 232 S.W.3d 616, 621 (Mo.App.2007); *Bostic v. Spherion Atlantic Workforce*, 216 S.W.3d 723, 725 (Mo.App.2007).

Employee presents only one point for decision. He contends that the Commission erred in determining that Employee was disqualified from receiving unemployment benefits because he had been discharged for misconduct connected with work. Employee argues that the Commission's decision is not supported by the evidence because Employer failed to meet its burden of proving that the February 28th incident resulted from Employee's intentional or reckless conduct.

■ Employee has framed the issue in such a way as to suggest that the only matter before this Court is whether the February 28th incident constituted misconduct. We disagree with the premise of Employee's argument. As the Commission found, Employee was

terminated because he had committed three safety violations in a three-month period. The Commission decided that Employee's actions in committing the three safety violations revealed a pattern of recurring negligent behavior that constituted misconduct. Without deciding the correctness of that legal conclusion, there is another basis upon which the Court can affirm the Commission's decision.

 Whether Employee's actions constituted misconduct connected with work is a question of law which this Court reviews *de novo. Korkutovic v. Gamel Co.,* 284 S.W.3d 653, 658 (Mo.App.2009); *Freeman,* 276 S.W.3d at 391. If the Commission reached the right result, its decision will not be overturned because a wrong or insufficient reason was given for the ruling. *Davis v. School of the Ozarks, Inc.,* 188 S.W.3d 94, 105 (Mo.App.2006); *SkillPath Seminars v. Summers,* 168 S.W.3d 465, 467 (Mo.App.2005). An employer has the right to expect that an employee will follow reasonable safety rules. *McClelland v. Hogan Personnel, LLC,* 116 S.W.3d 660, 666 (Mo.App.2003). When strict adherence to such rules is required to protect the lives and safety of others, the employee is held to a high degree of care in the exercise of his duties. *Ottomeyer v. Whelan Sec. Co.,* 202 S.W.3d 88, 91–92 (Mo.App.2006); *George's Processing, Inc. v. Ottendorf,* 57 S.W.3d 923, 927 (Mo.App.2001). A single instance of intentional disobedience of an employer's directive can constitute misconduct. *Freeman v. Gary Glass & Mirror, L.L.C.,* 276 S.W.3d 388, 392 (Mo.App.2009); *Dixon v. Stoam Industries, Inc.,* 216 S.W.3d 688, 693–94 (Mo.App.2007); *Silman v. Simmons' Grocery & Hardware, Inc.,* 204 S.W.3d 754, 757 (Mo.App.2006).

In the case at bar, Employer had adopted a reasonable safety rule prohibiting an employee from driving a forklift through a doorway forks first. The purpose of this rule was to protect other employees from being killed or injured by the forklift. Employee admitted that he deliberately violated this safety rule. As the Commission found, this incident formed part of the basis for Employer's decision to terminate Employee. The statutory definition of misconduct includes "a deliberate violation of the employer's rules[.]" § 288.030.1(23). Since Employee's deliberate violation of Employer's safety rule constituted misconduct[3] and was a significant factor in his termination, competent and substantial evidence supports the determination that Employee was discharged for misconduct connected with work. We deny Employee's point and affirm the Commission's decision denying Employee's claim for unemployment benefits.

BARNEY, J., and SCOTT, P.J., Concur.

---

**3.** *Hurlbut v. Labor and Indus. Relations Comm'n,* 761 S.W.2d 282, 285 (Mo.App. 1988).