Carmen L. WHITTED, Appellant,

v.

DIVISION OF EMPLOYMENT SECURITY, Respondent.

No. WD 71407.

Missouri Court of Appeals, Western District.

March 30, 2010.

Carmen L. Whitted, appellant pro se.

Larry R. Ruhmann, Jefferson City, MO, for respondent.

Before Division Two: JOSEPH M. ELLIS, Presiding Judge, VICTOR HOWARD, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Carmen Whitted (hereinafter "employee") appeals the Labor and Industrial Relations Commission's order finding that she had committed misconduct and was disqualified from receiving unemployment compensation benefits. For the reasons set forth herein we reverse the Commission's decision and remand the case.

**Facts and Procedural Background**

Employee was employed by CCMG, LLC (hereinafter "employer") as an apartment property manager for two and three quarter years when her employment was terminated on March 23, 2009. She was employed on a full time basis, and her final rate of pay was $17.33 per hour.

Employer's representative, Debbie Johnson (hereinafter "Johnson"), was employee's direct supervisor and testified at the hearing. She had only been employee's supervisor for one week prior to the employee's termination. The employer alleges that employee was terminated for "false records" and leaving the work premises without permission.

The employer's evidence showed that on March 20, 2009, Johnson arrived at the apartment complex at approximately 4:20 p.m. and found the employee sitting in the passenger seat of a car in the parking lot with an unknown individual; the office was locked, all of the lights were out, and the computers were turned off. When asked, the employee said she was leaving for the day. Employee's shift was from 8:00 a.m. to 5:00 p.m. Pursuant to company policy, if an employee wanted to take vacation time or leave early, it had to be prearranged with her supervisor. This was the first time Johnson had found the employee leaving early. The employee admitted that she was supposed to get permission to leave early and had not obtained the required permission from Johnson. The employee testified her prior supervisor was aware she had to leave early on occasion because of her ride home and she was given permission to skip lunch and leave early. She further testified that she had skipped lunch on March 20, 2009. This testimony was not disputed by the employer.

On March 20, 2009 Johnson had employee come back into the office at the apartment complex to go over some issues with the employee. In checking the files in the office, Johnson found six tenant files that did not have HUD "third party verification forms" in the file.

The apartment complex where the employee was working was subsidized housing through the Housing and Urban Development agency (HUD). Tenants had "third party verification forms" that had to be completed to show the tenant's employment and assets to qualify for rent assistance through HUD. Part of employee's job was to work with tenants to comply with HUD rent assistance eligibility. The "third party verification forms" were required by HUD regulations and company policy to be mailed or faxed directly to the third party and not to be provided to the

tenant for the tenant to deliver to the third party. This is to prevent tenants from committing fraud by falsifying these verifications. The employee was trained on HUD requirements. Employee acknowledged that she was aware that giving the forms directly to the tenant was a violation of HUD regulations but testified that her prior supervisor had instructed her to do so to expedite the processing of the forms. This testimony was not disputed by the employer.

Employee filed a request for unemployment benefits, and the Employer filed a Letter of Protest. A deputy with the Missouri Division of Employment Security determined that the employee was disqualified because she was discharged for misconduct in connection with her work. That decision was appealed to an Appeals Tribunal of the Missouri Division of Employment Security. A telephone hearing was held, and the deputy's decision was affirmed. That decision was appealed to the Labor and Industrial Relations Commission, and the decision of the Appeals Tribunal was affirmed. This appeal followed.

**Legal Analysis**

Our review of a decision of the Labor and Industrial Relations Commissions is limited by section 288.210.[1] This section provides that the court, "shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award." *Id.* The Court defers to the factual findings of the Commission but is not bound by the Commission's conclusions of law or the application of the facts to the law. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222 (Mo. banc 2003); *Korkutovic v. Gamel Co.,* 284 S.W.3d 653, 656 (Mo.App.2009). The Court must consider the whole record to determine if there is sufficient competent and substantial evidence to support the award. *Hampton* at 222.

The employee was found to have been discharged for misconduct connected with her work. The employee does not dispute the facts of the case, but challenges whether her actions constitute misconduct sufficient under the law to deprive her of benefits. When the employer claims a termination was for misconduct, the burden shifts to the employer to prove its claim. *Berwin v. Lindenwood Female Coll.,* 205 S.W.3d 291, 295 (Mo.App.2006). The Court's review of the application of the law to the facts is de novo. *Difatta–Wheaton v. Dolphin Capital Corp.,* 271 S.W.3d 594, 595 (Mo. banc 2008). Whether the employee's actions constitute misconduct associated with the employee's work is a question of law, and we are not bound by the finding of misconduct by the Commission. *White v. St. Louis Teacher's Union,* 217 S.W.3d 382, 388 (Mo.App.2007).

The purpose of the employment security law, as is set forth by the Legislature, is to benefit persons unemployed through no fault of their own, and the law is to be liberally construed to promote employment security by providing for payment of compensation to unemployed individuals. *Section* 288.020. Disqualifying

1. All statutory references are to RSMo.2000, unless otherwise indicated.

provisions of the Act are strictly construed against disallowance of compensation. *Mo. Div. of Employment Sec. v. Labor & Indus. Relations Comm'n*, 651 S.W.2d 145, 148 (Mo. banc 1983). Absent evidence that the employee deliberately or purposefully committed the violations, there can be no finding of misconduct. *Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 13 (Mo.App. 2005).

 The first allegation of misconduct by the employee is for "false forms." While the employer claims the employee was terminated for "false forms," there was no evidence that any of the approximately six forms in question was false or misleading in any way. In fact, the testimony was that the forms were not in the files because the employee gave the forms directly to the tenants. Johnson testified that the HUD regulations require the forms to go directly by fax or mail to the third party, but the HUD regulations were not placed in evidence. Employer's Exhibit 1, which was admitted into evidence without objection, is a portion of the HUD Occupancy Handbook. Page 5–51 of the Handbook provides that the employer can accept, but is not required to do so, third party verifications that are hand delivered by the tenant to the landlord. It specifically allows the landlord to review the documents for evidence of tampering and accept these types of verifications even when they are hand delivered by the tenant. There is no evidence in the record that the employer would be penalized by HUD for the actions of the employee in this case.

The employee testified that her previous supervisor had instructed her to give the third party verification forms directly to the tenants to expedite the processing of the applications. The Commission found that the prior supervisor had authorized the employee to give the forms directly to the tenant but found that the employee committed misconduct because she did not confirm with her new supervisor that she could still follow the former supervisor's directive. It is the employer's position that even if employee's actions were authorized by the supervisor, her actions still constitute misconduct because they violate the HUD regulations and company policy.

This case is analogous to *Pemiscot County Memorial Hospital v. Missouri Labor & Industrial Relations Commission*, 897 S.W.2d 222 (Mo.App.1995), wherein a hospital EMT performed an invasive procedure without authorization from a physician which was a violation of hospital policy. *Id.* at 227. The Court found the employee not to have committed misconduct because he was ordered to do the procedure by his immediate supervisor. *Id.* at 229. The Court, while noting the need for compliance with protocol and military like discipline in a healthcare setting, found that under the circumstances the employee had the right to rely on instructions from his immediate supervisor. This was true even though employee knew it violated hospital policy. The Court found the employer could not use the employee's actions to constitute misconduct when he was acting at the direction of his supervisor. *Id.*

Under the facts of this case we cannot find that the employee's compliance with the directives of her supervisor constitute misconduct precluding her from receiving benefits under the Act.[2]

 The second allegation of misconduct by the employee is a violation of the

---

2. Public policy may dictate in certain cases that a violation of a statute or government regulation constitutes disqualifying misconduct even if done at the direction of the employee's supervisor; however the facts in this case do not rise to that level.

employer's attendance policy. In this case the Commission found that the employee left work forty minutes early on one occasion. While the violation of an attendance policy may be grounds to terminate an employee, such a violation standing alone does not rise to the level of misconduct such that the employee should be denied benefits. *Div. of Employment Sec. v. Gardner–Denver Mach., Inc.,* 941 S.W.2d 13, 16 (Mo.App.1997). In this case the uncontroverted evidence is that the employee had permission from her prior supervisor to leave work early if she skipped lunch. On the date of March 20, 2009, the employee left work forty minutes early but had skipped lunch for that specific purpose. There was no testimony that the employee's new supervisor notified the employee that this was no longer an option. The employer has failed to establish that this one event constitutes misconduct. *White v. Wackenhut Corp.,* 208 S.W.3d 916, 919 (Mo.App.2006).

## Conclusion

For the foregoing reasons, we conclude that the employer failed to meet its burden of establishing that the employee was discharged for misconduct. The award of the Commission is reversed and the cause remanded to the Commission.

All concur.