**Elizabeth LIGHTWINE, Appellant,**

v.

**REPUBLIC R–III SCHOOL DISTRICT and Missouri Division of Employment Security, Respondents.**

**No. SD 30770.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 12, 2011.

James D. McNabb, Springfield, MO, for Appellant.

Ninion S. Riley, Jefferson City, MO, for Respondent.

WILLIAM W. FRANCIS, JR., Judge.

Elizabeth Lightwine ("Claimant") appeals the decision of the Labor and Industrial Relations Commission ("Commission") disqualifying her from unemployment benefits because she committed misconduct connected with her work. We affirm the Commission's decision.

## Facts and Procedural History

Claimant began working for the Republic R–III School District ("Employer") in July 2007, as a custodian. Employer's elementary school principal, and Claimant's direct supervisor, Darren Carter ("Mr. Carter"), verbally counseled Claimant during the summer of 2009 regarding her job performance. Mr. Carter specifically told Claimant she could not utilize her thirteen-year-old granddaughter to help her with her job duties.

The evening custodians, including Claimant, were scheduled to work the 2009–2010 school year from 1:30 p.m. to 10:00 p.m. Mr. Carter "made it clear" to the evening custodians this time could not be changed without his prior approval.

In February 2010, Mr. Carter noticed Claimant was leaving work before 10:00 p.m., without permission. On February 25, 2010, Mr. Carter observed Claimant's granddaughter again helping Claimant with her work. Claimant was discharged by Mr. Carter on February 26, 2010, pursuant to Employer's "Notice of Action." The relevant reasons included: (1) placing minor relatives in Claimant's work position, which was strictly prohibited; and (2) working different hours than assigned without permission from her supervisor.

On March 1, 2010, Claimant filed a claim for unemployment benefits. Her claim was subsequently approved. Thereafter, Employer protested the claim. On March 25, 2010, the Missouri Division of Employment Security ("Division") determined Claimant was not disqualified from receiving unemployment benefits because the "discharge was not for misconduct connected with work." Employer timely appealed the determination to the Appeals Tribunal of the Division ("Tribunal").

On June 2, 2010, a Tribunal referee conducted a telephone conference hearing. Mr. Carter and Claimant were the only witnesses.

Mr. Carter testified that in the summer of 2009, he "noticed that [Claimant's granddaughter] was moving desks and emptying trash, and . . . doing some of the jobs that were [Claimant's] jobs." Mr. Carter stated he "didn't mind [Claimant's] granddaughter being [t]here, but . . . [he] couldn't allow her to perform any of the duties that were [Claimant's] job duties." Mr. Carter stated he addressed this, and other issues, with Claimant in their July 2009 meeting wherein Claimant was given a verbal warning. Mr. Carter also stated that on February 25, 2010, he again observed Claimant's granddaughter helping Claimant with her work. The "granddaughter was helping empty trash and was going from room to room with [Claimant] helping her perform her duties." However, Mr. Carter said he only "visually saw" the granddaughter emptying trash.

Mr. Carter further testified that during the 2009–2010 school year, Claimant was working different hours than assigned, without permission. Mr. Carter testified once he met with both evening custodians, and it was decided the shift time would be 1:30 p.m. to 10:00 p.m., he "made it clear . . . that would be the time, and . . . it would not be allowed to be changed unless it was through me." He testified in February 2010, he "noticed" Claimant was leaving work around 9:00 p.m. most evenings, without permission. He "knew" Claimant left work prior to 10:00 p.m. every evening during the week of February 22.

Mr. Carter stated that during the "dismissal process," Claimant acknowledged she was still having her granddaughter work for her because Claimant felt it helped her granddaughter develop a strong work ethic. He reminded Claimant they talked about this issue during the summer, and Claimant agreed. Mr. Carter also testified Claimant acknowledged she had been working different hours than were assigned.

Claimant testified her granddaughter helped her empty trash in the past, but after her July 2009 meeting with Mr. Carter, her granddaughter "did not help [her][any] more." Claimant suggested perhaps her granddaughter was helping Claimant's daughter, who was working in the same building at the time as a substitute custodian. Upon further questioning, Claimant conceded she could not remember whether or not her granddaughter helped her in February 2010 and that "[i]f she did, it was just cause she's standing there and picked it up."

Claimant acknowledged her scheduled work shift was from 1:30 p.m. to 10:00 p.m., and she was to get a thirty-minute lunch break and two fifteen-minute breaks. Claimant admitted she had left work thirty minutes early at least one time during the week of February 22, without receiving permission. She said she had not taken her breaks and "figure[d] if the other guy can work three hours and go home, then I can leave 30 minutes early when I didn't get a break."

■ On June 7, 2010, the Tribunal issued its decision reversing the Division's determination. The Tribunal held Claimant was disqualified from receiving benefits because she was discharged for misconduct connected with her work. Claimant timely appealed the decision to the Commission. On July 28, 2010, the Commission affirmed and adopted the Tribunal's decision.[1] This appeal followed.

Claimant's only point on appeal contends there was insufficient competent evidence to support a finding she was discharged for misconduct connected with her work. Employer argues there was substantial competent evidence to support the Commission's finding. The sole issue for our determination is if there is sufficient competent evidence to support the award of the Commission.

### Standard of Review

Review of the Commission's decision is governed by section 288.210.[2] *Dixon v. Stoam Industries, Inc.,* 216 S.W.3d 688, 692 (Mo.App. S.D.2007). Pursuant to section 288.210, this Court may reverse, modify, set aside or remand a decision by the Commission only on the following grounds: (1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant the making of the award. *Dixon,* 216 S.W.3d at 692.

■ "We will affirm the Commission's award 'if there is sufficient competent and substantial evidence to support the award.'" *Murphy v. Aaron's Automotive Products,* 232 S.W.3d 616, 620 (Mo.App. S.D.2007) (quoting *Peoples v. ESI Mail Pharmacy Servs., Inc.,* 213 S.W.3d 710, 711 (Mo.App. E.D.2007)). "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003). "Whether the findings of the Commission support the conclusion that Claimant's behavior constituted misconduct is a question of law that we review independently." *Murphy,* 232 S.W.3d at 620. "'We, however, must accept the Commission's judgment on the evidence and defer to the Commission on determinations regarding weight of the evidence and the credibility of witnesses.'" *Id.* (quoting *Silman v. Simmons' Grocery & Hardware, Inc.,* 204 S.W.3d 754, 755 (Mo.App. S.D.2006)).

### Analysis

"Misconduct" disqualifying an employee from unemployment benefits is defined as:

> [A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

§ 288.030.1(23).

■ "'Work-related misconduct' must involve a willful violation of the rules or

---

1. "Therefore, when reviewing the order of the Commission, this Court examines the decision of the Appeals Tribunal." *Murphy v. Aaron's Automotive Products,* 232 S.W.3d 616, 619 (Mo.App. S.D.2007).

2. All references to statutes are to RSMo 2000, unless otherwise indicated.

standards of the employer." *West v. Baldor Elec. Co.*, 326 S.W.3d 843, 847 (Mo. App. E.D.2010). " 'Willful is defined as proceeding from a conscious motion of the will; voluntary; knowingly, deliberate; intending the result which actually comes to pass; designed; intentional; purposeful; not accidental or involuntary.' " *Murphy*, 232 S.W.3d at 621 (quoting *McClelland v. Hogan Personnel, LLC*, 116 S.W.3d 660, 666 (Mo.App. W.D.2003)) (internal quotation omitted). "An employee's willful violation of an employer's reasonable work rule constitutes misconduct." *Noah v. Lindbergh Inv., LLC*, 320 S.W.3d 212, 216 (Mo.App. E.D.2010). " 'A single instance of intentional disobedience of an employer's directive can constitute misconduct.' " *Id.* (quoting *Finner v. Americold Logistics, LLC*, 298 S.W.3d 580, 584 (Mo.App. S.D.2009)). The employer bears the burden of proving misconduct. *Scrivener Oil Company, Inc. v. Division of Employment Security*, 184 S.W.3d 635, 640 (Mo.App. S.D.2006).

The Commission concluded the evidence showed Employer "discharged the [C]laimant because she allowed her granddaughter to help her with her job and because she left work early. The evidence does show misconduct connected with work on the part of the [C]laimant."

■ In regard to the Commission's conclusion that Claimant left work early, Claimant argues there are no findings to support any element of willfulness because there was "no specific rule, warning or directive referred to." This contention is without merit. The Commission found Claimant was scheduled to work 1:30 p.m. until 10:00 p.m., but left early without permission. Sufficient evidence in the record supports this finding. Mr. Carter testified

he "made it clear" to the evening custodians their time could not be changed without his prior approval. Additionally, Claimant acknowledged before school started in the fall of 2009, she knew: (1) she was to work from 1:30 p.m. to 10:00 p.m.; (2) she was to take a lunch break of thirty minutes and two fifteen-minute breaks; and (3) she did not have permission to leave early if she did not take her breaks. Thus, the record supports there was a specific directive Claimant knew about and willfully disregarded by leaving work early.

■ Claimant was also discharged because she allowed her granddaughter to help with her job. Claimant asserts there was no evidence Claimant knew about her granddaughter's work or encouraged it, and the rule prohibiting her granddaughter from helping her work is not reasonable.[3] These assertions are also unsupported by the record.

■ First, Mr. Carter testified he saw Claimant's granddaughter "going room to room *with* [Claimant] helping her perform her duties." (Emphasis added). Mr. Carter further testified that Claimant acknowledged, during the dismissal process, she was still having her granddaughter work for her. "The Commission, as the trier of facts, can believe or disbelieve none, all or part of any witness' testimony and draw inferences from facts dissimilar to those which a court on judicial review may have drawn." *Lauderdale v. Division of Employment Security*, 605 S.W.2d 174, 178 (Mo.App. E.D.1980). Thus, this evidence sufficiently demonstrated Claimant knew about her granddaughter's work.

---

**3.** As to this finding of misconduct, Claimant does not assert there was no specific rule set by Employer.

Claimant acknowledged that she knew she was not to have relatives assisting her with her job duties, including her thirteen-year-old granddaughter. Contrary to Appellant's assertion, these directives were reasonable in that they enabled Employer to effectively supervise its employees and served to establish the employee's job requirements, maintain a professional work environment, protect Employer and its employees from potential liability, and protect the safety of minors in the workplace.

The record demonstrates Employer discharged Claimant for willfully disregarding Employer's reasonable directives and the standards of behavior Employer had the right to expect from Claimant and thus constituted misconduct pursuant to section 288.030.1(23). We conclude there was sufficient competent evidence to support a finding of misconduct in order to disqualify Claimant from unemployment benefits, pursuant to section 288.050.2. Accordingly, we affirm the decision of the Commission.

SCOTT, C.J. and BATES, J. Concur.