Robert McCRACKEN, Claimant–
Appellant,

v.

BRANSON AIRPORT, LLC, Employer,

and

Division of Employment Security,
Respondent.

No. SD 30978.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 31, 2011.

James D. McNabb, Springfield, MO, for Appellant.

Robert A. Bedell, Jefferson City, MO, for Respondent.

Employer acting pro se.

JEFFREY W. BATES, Judge.

Claimant Robert McCracken (Employee) appeals from a decision by the Labor and Industrial Relations Commission (Commission) that he was disqualified from unemployment benefits. The Commission determined that Employee had been discharged for misconduct connected with his work. *See* § 288.050.2.[1] On appeal, Employee argues that his actions did not constitute misconduct as defined in § 288.030.1(23). Because that argument has merit, we reverse and remand.

In the case at bar, the Commission resolved conflicts in the evidence and decided which witnesses were credible. We defer to those factual determinations. *Keaweehu v. 7–Eleven, Inc.*, 334 S.W.3d 666, 671 (Mo.App.2011). The only issue in this appeal is the correctness of the Commission's legal conclusion that Employee's actions constituted misconduct. Whether Employee's actions constituted misconduct associated with work is a question of law which this Court reviews *de novo*. *See Whitted v. Div. of Employment Sec.*, 306 S.W.3d 704, 706 (Mo.App.2010); *McClelland v. Hogan Personnel, LLC*, 116 S.W.3d 660, 664 (Mo.App.2003); *Finner v. Americold Logistics, LLC*, 298 S.W.3d 580,

584 (Mo.App.2009). We do not defer to the Commission's legal conclusions or its application of law to the facts. *Finner*, 298 S.W.3d at 581.

In applying the relevant statutory provisions, we also are mindful that Missouri's Employment Security Law is to be "liberally construed to accomplish its purpose to promote employment security ...." § 288.020.2 RSMo (2000). For this reason, the disqualifying provisions of the act are to be strictly construed against the disallowance of benefits. *St. John's Mercy Health System v. Div. of Employment Sec.*, 273 S.W.3d 510, 514 (Mo. banc 2009).

Employee worked as a travel services representative for Branson Airport, LLC (Employer) from October 2009 until June 3, 2010. Employee's job duties included answering telephone calls at a call center and booking travel packages for customers flying into and out of the airport.

Employee's immediate supervisor was Rachael Wood (Wood). On May 20, 2010, Wood and Employee discussed various problems with his work. She prepared a document called "Discussion Notes" which stated that Employee was "behind in his work all the time.... Customers are constantly complaining that he is not returning their calls." These notes also stated:

> [Employee] is repeatedly late for work. Specifically, last week he was late several days and the call center did not get open on time. He is a salaried employee of the airport, however, when he is on the schedule he must show up on time and stay for the length of that shift. The schedule is so tight that if he doesn't get here on time, then the call center is empty and no one is answering the phones. Also, it must be understood that by being a salaried employee at the

---

1. All references to statutes are to RSMo Cum. Supp. (2009) unless otherwise specified.

airport, it is expected and required to be available when needed, regardless if that exceeds 40 hours. All other salaried employees work more than 40 hours. Various times in the past several weeks, I have asked [Employee] to stay to help out or come in early and he has done so, but let me know that he is keeping track of the extra hours that he is working so he can take extra time off at a later date.

Employee was told, "[t]his is a final warning. The next incident will be cause for termination. [Employee] will be subject to review in 30 days."

On Saturday, May 29, 2010, Employee worked from 7:30 a.m. until 4:30 p.m. Wood had scheduled Employee to work that day until 5:30 p.m. On June 1, 2010, Employee incorrectly waived a $50 unaccompanied minor fee that was applied to 80 travelers. That error cost Employer over $4,000. On June 3, 2010, Employee was discharged.

The next day, Employee applied for unemployment benefits. In response, Employer sent a letter protesting the claim. Employer attached to the letter the Discussion Notes and specified that Employee was terminated for three reasons: (1) he "left several hours early without permission on Saturday, May 29th"; (2) he "changed an unaccompanied minor travel policy without permission"; and (3) Employer "had repeated complaints from customers that [Employee] was not calling them back."

A deputy of the Missouri Division of Employment Security (the Division) initially determined that Employee was discharged for "misconduct connected with work" because he waived "the unaccompa-

nied minor fee for a customer. The claimant did not have the authorization to [waive] the fee."

Employee appealed that decision to the Appeals Tribunal (Tribunal). In August 2010, Employee and Wood each testified via a telephone hearing with a Tribunal referee. Employee gave the following testimony. He was generally scheduled to work from 7:30 a.m. to 4:30 p.m. on Tuesday through Saturday. On Saturday May 29th, he left at 4:30 p.m. because that was when he believed his shift ended. Wood gave the following testimony. In March and April 2010, Employee was scheduled to work from 7:30 a.m. to 4:00 p.m. Thereafter, his schedule changed daily. On May 29th, Employee was scheduled to work from 7:30 a.m. until 5:30 p.m.[2] Employee left the call center around 4:30 p.m. and did not have Wood's permission to leave early. Employee should have looked at his schedule.

The Tribunal affirmed the decision of the deputy disqualifying Employee from receiving unemployment benefits. The Tribunal concluded that Employee had been discharged for misconduct connected with work because he left work one hour early without permission:

The claimant left work an hour early on May 29, 2010, because he was allegedly confused about what time his shift ended. It was the claimant's responsibility to know what hours he was scheduled to work. His leaving work early on May 29, 2010, indicates a disregard of the standards of behavior the employer had a right to expect of the claimant and, thus, constitutes misconduct connected with work, especially since he had been specifically warned about attendance.

2. When the referee asked Wood what Employee's schedule was on May 29th, Wood said, "I would have to look that up." She

was only able to determine Employee's schedule for that day after consulting some records.

Employee appealed the Tribunal's decision to the Commission. The Commission decided that the Tribunal's decision was correct and should be affirmed. The Commission supplemented that decision, however, with additional facts and analysis. The Commission made a specific finding that Wood's testimony was credible. Relying on § 288.030.1(23), the Commission concluded that Employee was discharged for misconduct connected with his work because his act of "leaving work an hour early on May 29, 2010, after he had already been warned about his attendance just nine days earlier, was a disregard of the standards of behavior employer had a right to expect of [Employee] and, thus, constitutes misconduct connected with work."[3] Accordingly, the Commission determined that Employee was disqualified for unemployment benefits. This appeal followed.

■ Employee contends the Commission erred by deciding that Employee was discharged for misconduct connected with work. He argues that his act of leaving work one hour early on May 29th did not constitute misconduct because there was no evidence that he acted willfully. We agree.

■ An employee is disqualified from receiving unemployment benefits if he or she has been discharged for misconduct connected with work. § 288.050.2. Misconduct is defined as:

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

§ 288.030.1(23). An employer bears the burden of proving such misconduct by a preponderance of the evidence. *Rush v. Kimco Corp.*, 338 S.W.3d 407, 411 (Mo. App.2011).[4] "Poor workmanship, lack of judgment, or the inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct." *McClelland v. Hogan Personnel, LLC*, 116 S.W.3d 660, 665 (Mo.App.2003). Indeed, as this Court has recognized, "there is 'a vast distinction' between conduct that may support an at-will employee's termination, on the one hand, and conduct that will justify disqualification from unemployment benefits, on the other." *Walker v. Div. of Employment Sec.*, 333 S.W.3d 517, 520 (Mo.App.2011).

■ The legal conclusion that an employee committed misconduct by disregarding an employer's expected standard of behavior must be based upon proof that the employee willfully, purposely or deliberately disregarded that standard. *See,*

---

**3.** The Commission also determined that Employee did not commit misconduct by waiving the unaccompanied minor fee or by failing to return customer telephone calls. The Division has not challenged those determinations on appeal.

**4.** Under certain circumstances, an employee's absenteeism or tardiness may create a rebuttable presumption of misconduct. *See* § 288.050.3. In the case at bar, however, the Commission based its misconduct analysis solely upon § 288.030.1(23). Therefore, we do not consider what effect, if any, the rebuttable presumption of misconduct in § 288.050.3 might have had upon the allocation of the burdens of production and persuasion in this case. *See Venz v. Convergys Customer Management Group, Inc.*, 326 S.W.3d 554, 558 n. 4 (Mo.App.2010); *Williams v. Enterprise Rent–A–Car Shared Services, LLC*, 297 S.W.3d 139, 143–44 (Mo.App.2009).

*e.g., Lightwine v. Republic R–III School Dist.,* 339 S.W.3d 585, 589–90 (Mo.App. 2011); *Murphy v. Aaron's Automotive Products,* 232 S.W.3d 616, 621–22 (Mo. App.2007); *White v. Wackenhut Corp.,* 208 S.W.3d 916, 918 n. 2 (Mo.App.2006); *Hoover v. Community Blood Center,* 153 S.W.3d 9, 15 (Mo.App.2005).

In *Lightwine,* for example, this Court affirmed the Commission's legal conclusion that the claimant committed misconduct by leaving work early. We did so because there was sufficient evidence to prove that: (1) the claimant knew she was scheduled to work from 1:30 p.m. to 10:00 p.m.; (2) she also knew her schedule could not be changed without her supervisor's prior approval; and (3) claimant willfully left work early without permission. *Lightwine,* 339 S.W.3d at 590.

In the case at bar, no such evidence was presented. According to Wood, whom the Commission found to be a credible witness, Employee's schedule changed daily after April 2010. At the meeting on May 20th, Wood had warned Employee to stop arriving at work late. In Wood's Discussion Notes from that meeting, however, she acknowledged that, at "[v]arious times in the past several weeks, I have asked [Employee] to stay to help out or come in early and he has done so. . . ." Thus, Wood's own testimony shows that Employee was attempting to follow Employer's scheduling directives. On May 29th, Wood had scheduled ·Employee to work from 7:30 a.m. until 5:30 p.m. Employee arrived at work, on time and as scheduled, at 7:30 a.m. He left around 4:30 p.m. Employer presented evidence, which the Commission believed, that Employee *should have known* he was scheduled to work until 5:30 p.m.[5] Our review of the record reveals no evidence proving that Employee *knew* he was supposed to work until 5:30 p.m. and

intentionally left work one hour early. In the absence of such evidence, the Commission misapplied the law by concluding that Employee committed misconduct connected with his work. *See Lightwine,* 339 S.W.3d at 590. Employee's failure to check his schedule was indicative of an oversight or poor judgment on his part, rather than the type of deliberate violation required for misconduct. *See Whitted v. Div. of Employment Sec.,* 306 S.W.3d 704, 708 (Mo.App.2010) (employee's act of skipping lunch and leaving work forty minutes early on one occasion did not constitute misconduct because she did not know this violated the employer's attendance policy); *White,* 208 S.W.3d at 919 (employee's act of oversleeping due to an alarm clock malfunction did not constitute misconduct, even though the employee was aware that the clock had malfunctioned in the past). Employee's point has merit and is granted.

The Commission's decision is reversed. The cause is remanded for entry of an appropriate award.

BARNEY and SCOTT, JJ., Concur.

---

**5.** At oral argument, the Division's counsel agreed there was no evidence proving that Employee knew he was leaving work early on May 29th.