

# In the
# Missouri Court of Appeals
## Western District

COURTNEY J. WHITELEY, )
)
    Appellant, )
) WD87241
V. )
) OPINION FILED:
HALE ROBINSON & ROBINSON LLC, ) FEBRUARY 4, 2025
EMPLOYER AND DIVISION )
OF EMPLOYMENT SECURITY, )
)
    Respondent. )

**Appeal from The Labor and Industrial Relations Commission**

Before Division I: Gary D. Witt, Presiding Judge, Lisa White Hardwick, Judge and
Edward R. Ardini, Jr., Judge

Courtney J. Whiteley appeals from the order of the Labor and Industrial Relations

Commission ("Commission") denying her claim for unemployment benefits on the basis

that she was discharged for misconduct associated with her work. On appeal, Whiteley

claims that the Commission erred in: (1) finding that she had infrequent communications

with her clients because the finding was not supported by substantial and competent

evidence; (2) determining that she was discharged for misconduct associated with her

work because her employer, Hale Robinson and Robinson, LLC ("Employer"), had not

shown the requisite culpability to establish misconduct; (3) acting without or in excess of

its powers in overruling the Appeals Tribunal's decision and requiring "military-like

discipline" in adherence to the rules of professional conduct; and (4) acting without or in excess of its powers when it interpreted the rules of professional conduct. We reverse the order of the Commission and remand for an award of unemployment benefits.

## Factual and Procedural Background

The following comes from the decision of the Appeals Tribunal's Findings of Fact:[1]

> The claimant [Whiteley] worked for the employer [Employer] since February 1, 2022, last earning $60,000.00 per year as an associate attorney. [Whiteley's] last day present and working for [Employer] was June 22, 2023. [Employer] discharged [Whiteley] on July 31, 2023, because it determined that she was not communicating effectively with her clients.
> [Whiteley] represented forty to fifty clients at a time for [Employer]. [Employer] expected [Whiteley] to communicate effectively with her clients and to promptly respond to client communications. These expectations were important to [Employer] because it was in [Employer's] best interest to maintain a good reputation with the community. [Employer] notified [Whiteley] of its expectations and its interest.
> On June 21, 2022, [Employer] issued [Whiteley] a written warning due to multiple client complaints about her communication. The warning provided suggestions for [Whiteley] to improve in that area. One of the suggestions was for [Whiteley] to send weekly updates to all her clients. The warning did not state that [Whiteley] could be discharged for failing to send weekly updates.
> After the warning, [Whiteley] took measures to improve her communication with clients. Specifically, [Whiteley] made every effort to send weekly email updates and tried her best to promptly respond to all client communications. When [Whiteley] was too busy to respond, she forwarded client communications to her paralegal to address. [Whiteley] did not send weekly updates to all her clients every week. On weeks that [Whiteley] did not send updates to all her clients, she was busy with other matters or had no new information for the clients.
> Despite [Whiteley's] efforts, some clients continued to submit complaints to [Employer] about [Whiteley's] communication. As a result, [Employer] issued [Whiteley] a second written warning on May 30, 2023.

---

[1] We adopt these findings of fact for purposes of this appeal, as they are supported by the evidence in the record, were not rejected by the Commission, and are expressly adopted by Respondent Division of Employment Security in its Respondent's Brief.

That warning outlined the same suggestions for improvement as those listed on the June 21, 2022[] document.

When [Whiteley] received the May 30, 2023[] warning, she requested the written complaints from [Employer] so that she could understand what she was doing wrong. [Employer] did not provide [Whiteley] with the written complaints. Consequently, [Whiteley] took the same measures to improve her communication as she had previously.

On June 23, 2023, [Whiteley] went on approved maternity leave from [Employer]. [Employer] did not require [Whiteley] to communicate with clients during her absence. While [Whiteley] was on maternity leave, [Employer] reviewed [Whiteley's] case files and found at least one more complaint about her communication. [Employer] decided to discharge [Whiteley] before she returned from maternity leave.

After Whiteley was terminated from her employment with Employer, she filed a claim for unemployment benefits. Employer objected to Whiteley's application for benefits, and a deputy determined that Whiteley was ineligible for benefits because she was terminated due to misconduct associated with her work. Whiteley appealed this determination, and the Appeals Tribunal heard the appeal by means of a series of telephone conference hearings. Whiteley, who was represented by counsel, testified, as did one witness for Employer. The Appeals Tribunal reversed the denial of benefits and determined that Whiteley was not disqualified for benefits in that she was discharged from work but had not committed misconduct associated with her work. The Commission's order reversed the Appeals Tribunal, concluding that Whiteley was disqualified from receiving benefits because she had been discharged for misconduct associated with her work. This appeal follows.

**Standard of Review**

"This Court may modify, reverse, remand for rehearing, or set aside the decision of the Commission if we find 'that there was no sufficient competent evidence in the record to warrant the making of the award.'" *Esquivel v. Hy-Vee, Inc.*, 498 S.W.3d 832, 835 (Mo. App. W.D. 2016) (quoting Section 288.210(4)).[2] "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record." *Id.* (quoting *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003)). We are not, however, bound by the Commission's conclusions of law or its application of law to the facts, including the issue of whether an employee's actions constitute misconduct, which we review *de novo. Bridges v. Mo. S. State Univ.*, 362 S.W.3d 436, 438 (Mo. App. S.D. 2012).

**Analysis**

Whiteley brings four points on appeal. The second point is dispositive. Whiteley alleges that the Commission erred in concluding that she was discharged for misconduct associated with her work in that Employer failed to show the requisite culpability. We agree.

A claimant has the burden of proving her right to receive unemployment benefits in the first instance, however the employer bears the burden of proving ineligibility due to misconduct. *Seck v. Dep't of Transp.*, 434 S.W.3d 74, 82 (Mo. banc 2014). Relevant to this case, misconduct is defined by section 288.030.1(23) as:

---

[2] All statutory references are to the Revised Statutes of Missouri (2016) as updated by supplement through the date of Whiteley's discharge unless otherwise noted.

(a) Conduct or a failure to act demonstrating knowing disregard of the employer's interest or a knowing violation of the standards which the employer expects of his or her employee;

(b) Conduct or a failure to act demonstrating carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer;

(c) A violation of an employer's no-call, no-show policy; chronic absenteeism or tardiness in violation of a known policy of the employer; or two or more unapproved absences following a written reprimand or warning relating to an unapproved absence unless such absences are protected by law;

(d) A knowing violation of a state standard or regulation by an employee of an employer licensed or certified by the state, which would cause the employer to be sanctioned or have its license suspended or revoked; or

(e) A violation of an employer's rule . . . .

Although Employer argued before the Appeals Tribunal that it had a rule or policy requiring Whiteley to make weekly email contact with each of her clients, the Appeals Tribunal expressly found Employer's testimony "not credible because the written warnings issued to [Whiteley] expressly state weekly client updates as a suggestion for improvement.  Additionally, no such written policy was in evidence."  The Appeals Tribunal also noted, "While [Employer's] concerns about effective communication may have justified its decision to discharge [Whiteley], that is not the same issue as whether [she] qualifies for unemployment benefits."  It concluded Employer "failed to demonstrate by a preponderance of the evidence that [Whiteley] knowingly disregarded its interests or knowingly violated the standards it expected.  Moreover, [Employer] did not establish that [Whiteley] violated a rule or policy."

5

The Commission may make factual findings and credibility findings contrary to those of the Appeals Tribunal. *See Hampton*, 121 S.W.3d at 222-23; *Sartori v. Kohner Props. Inc.*, 277 S.W.3d 879, 884 (Mo. App. E.D. 2009). However, in this case, the Commission did not reject either the Appeals Tribunal's credibility determination or its factual findings. Rather, the Commission merely reached a different legal conclusion, using a legal standard not found in the statute:

> [T]he Courts have recognized that in some areas of work, military-like discipline is needed to protect others. *See Finner v. Americold Logistics, LLC*, 298 S.W.3d 580, 584 (Mo. App. S.D. 2009). While *Finner* and other cases in which the courts have found similar determinations cite careers like those in the medical field or security officers, we believe the legal field should be held to similarly heightened scrutiny. The state and its courts have decided that the role of attorneys is of such import that there are specific rules, adopted by the courts, to control their behavior. In the present case, [Whiteley's] infrequent communications with her clients and the repeated necessity of the employer to speak with her lead to a conclusion that [Whiteley's] poor work performance was more than mere poor work performance and constituted negligence in such recurrence as to manifest culpability.

There are several things improper with this analysis.

First, *Finner* is inapplicable to this case. Contrary to the Commission's interpretation of the case, *Finner* did not apply any kind of heightened scrutiny. Rather, it was decided on the basis that the employee, by his own admission, "deliberately violated [a] safety rule," and that the definition of misconduct in section 288.030.1(23) includes "a deliberate violation of the employer's rules." *Finner*, 298 S.W.3d at 584.

Second, the Commission's purported "heightened scrutiny" approach is found nowhere in the statute, and such extra-statutorial tests were expressly rejected by our

6

Supreme Court in *Seck v. Dep't of Transp.*, 434 S.W.3d 74, 83 n.4 (Mo. banc 2014), wherein the Court stated:

> Notwithstanding the plain language of the statute, some decisions have held that "a disregard of the standards of behavior that an employer has the right to expect" must still be willful or intentional in order to constitute misconduct under section 288.030.1(23). *See, e.g., Nevettie v. Wal-Mart Associates, Inc.*, 331 S.W.3d 723, 729 (Mo. App. 2011); *Bostic v. Spherion Atl. Workforce*, 216 S.W.3d 723, 725-26 (Mo. App. 2007); *Murphy v. Aaron's Auto. Products*, 232 S.W.3d 616, 621-22 (Mo. App. 2007). In the future, such cases should not be followed.

We cannot interpret *Seck*, which the Division cites in its brief, to prohibit a scienter requirement that is not in the statute, and yet require "heightened scrutiny" that similarly is not based in the plain language of the statute. As the Supreme Court stated, "[G]iven the remedial nature of the purposes of unemployment benefits, it is clear that the third category of section 288.030.1(23) is not intended to preclude benefits for every employee who is discharged merely because his conduct fell short of his employer's expectations." *Seck*, 432 S.W.3d at 83.

Moreover, the statutory definition of misconduct already provides for consideration of certain conduct that would violate professional standards. Subsection (23)(d) includes "A knowing violation of a state standard or regulation by an employee of an employer licensed or certified by the state, which would cause the employer to be sanctioned or have its license or certification suspended or revoked[.]" In this case, Employer did not allege that Whiteley violated any Supreme Court rule of attorney professional conduct, and the Commission made no finding that she had violated any rule, knowingly or otherwise.

Finally, the Division's argument that the Commission's decision was based upon Subsection (23)(b), which covers conduct "demonstrating carelessness or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or a knowing disregard of the employer's interest or of the employee's duties and obligations to the employer[,]" completely ignores the facts as determined by the Appeals Tribunal, which the Division adopted as its own for purposes of this appeal. The Appeals Tribunal found that Whiteley "made every effort to send weekly email updates and tried her best to promptly respond to all client communications." The Findings of Fact also include that Whiteley "took measures to improve her communication with clients[,]" and it enumerates some of the measures she took. The Division cites to no case, nor could we locate one, where misconduct was found based solely on poor performance despite the employee's best efforts. Rather, we agree with the Appeals Tribunal that Whiteley's performance deficiencies, while justification for discharge, do not disqualify her from unemployment benefits.

## Conclusion

For the above-stated reasons, we reverse the order of the Commission and remand for an award of unemployment benefits.

_____
Gary D. Witt, Presiding Judge

All concur

8